UNITED STATES of America,
Appellant in 91–1201,

v.

Thomas L. McGILL, Jr., Appellant
in 91–1122.

Nos. 91–1122, 91–1201.

United States Court of Appeals,
Third Circuit.

Argued October 15, 1991.

Decided May 13, 1992.

As Amended May 19, 1992.

Laura A. Ingersoll (argued), Jackie M. Bennett, Jr., Phillip A. Talbert, Public Integrity Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for appellant in No. 91–1201.

Thomas C. Carroll (argued), Philadelphia, Pa., for appellant in No. 91–1122.

Before: STAPLETON, SCIRICA and ROTH, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge.

Defendant Thomas L. McGill, Jr. was convicted in the Eastern District of Pennsylvania of five violations of the Internal Revenue Code. Of these convictions, one fell within the Federal Sentencing Guidelines, and on this count the trial judge granted McGill a two-level reduction for acceptance of responsibility. The Government appeals that reduction. McGill cross-appeals his convictions on all five counts.

The Government charged McGill under 26 U.S.C. § 7201 (1988 and Supp.1990) with five counts of evasion of payment of income taxes, comprising tax years 1980 through 1987.[1] Section 7201 is a felony

---

1. 26 U.S.C. § 7201 provides:

 § 7201. Attempt to evade or defeat tax

 Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addi-

offense. A jury found McGill guilty of three counts of evasion of payment, covering the years 1985 through 1987 (Counts 6, 7 and 8). The jury acquitted McGill of felony charges on the remaining two counts, which included tax years 1980 through 1984 (Counts 4 and 5). On those two counts, however, the jury found that McGill willfully failed to pay federal income taxes, a misdemeanor under 26 U.S.C. § 7203 (1988 and Supp.1990).[2]

McGill contests several aspects of his trial, including the sufficiency of the evidence as to the felony convictions, misleading jury instructions, misjoinder of offenses, and the erroneous exclusion of evidence relating to the willfulness of his violations. This court has jurisdiction over appeals from final judgments of conviction under 28 U.S.C. § 1291 (1988). We have jurisdiction under 18 U.S.C. § 3742(b) (1988) to review the Government's appeal of the sentence imposed on McGill under Count 8.

We will affirm in part and reverse in part. We will affirm the misdemeanor convictions on Counts 4 and 5, and McGill's felony conviction on Count 6. We believe, however, that there was insufficient evidence of affirmative acts of evasion for the tax years 1986 and 1987. Therefore, we will reverse the convictions on Counts 7 and 8. Because of our decision on Count 8, we need not reach the sentencing issue raised by the Government.[3]

## I.

### A. *Procedural History*

On March 27, 1990, Thomas McGill and co-defendants Kenneth Harris and Leon Brown were charged by a federal grand jury with violation of the Travel Act, 18 U.S.C. § 1952 (1988), and conspiracy to violate the Travel Act, 18 U.S.C. § 371 (1988). Additionally, McGill was charged with five counts of evading payment of his federal income taxes, in violation of 26 U.S.C. § 7201. After a seven-day jury trial, McGill was convicted of three of the felony counts of evasion of tax payment (26 U.S.C. § 7201),[4] and of two counts of the lesser-included offense of willful failure to pay federal income taxes (26 U.S.C. § 7203).[5] McGill was acquitted, and the other defendants were convicted, of the Travel Act violations and the related conspiracy charge, which arose out of an alleged judicial bribery scheme.

McGill was sentenced to two five year terms of probation on Counts 6 and 7, these terms to be served concurrently with each other and to a concurrent term of five years probation imposed under the one felony (Count 8) which fell within the Federal Sentencing Guidelines. The five years probation under Count 8 included a condition that McGill spend the first month in a community treatment center or half-way house, followed by three months of home confinement. The court computed this sentence under the Guidelines after awarding

---

tion to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

**2.** 26 U.S.C. § 7203 provides:

§ 7203. Willful failure to file return, supply information, or pay tax

Any person required under this title to pay any estimated tax or tax, ... who willfully fails to pay such estimated tax or tax, ... at the time or times required by law or regulations, shall, ... be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution....

Section 7203 was amended in November 1990, eight months after the date of McGill's indictment, but the amendments are not relevant to this appeal.

**3.** While we do not reach the Government's sentencing issue, we note that the challenged two-point reduction would be well-within the trial judge's discretion.

**4.** Specifically, McGill was found guilty of evading payment of taxes in the amounts of:

| | |
|---|---|
| Count 6 | $1,593 for 1985; |
| Count 7 | $6,860 for 1986; |
| Count 8 | $9,144 for 1987. |

**5.** Specifically, McGill willfully failed to pay:

| | |
|---|---|
| Count 4 | $25,556 for 1980–1983; |
| Count 5 | $ 3,757 for 1984. |

McGill a two-level reduction for acceptance of responsibility. Additionally, McGill was sentenced to two consecutive one year terms of probation on the misdemeanors, these terms to run concurrently with the five year terms.

McGill filed a post-verdict motion seeking judgment of acquittal, or alternatively, a new trial. In the motion for judgment of acquittal, McGill alleged insufficient evidence on two elements of the felony charge: affirmative acts of evasion and willfulness. He also alleged failure of proof as to willfulness on the two misdemeanor counts. The motion for new trial focused on improper jury instructions regarding: willfulness and affirmative acts of evasion; the relevance of the defendant's Offer In Compromise; the voluntariness of levy collections; the relevance of the defendant's inability to pay his taxes; and the charging of lesser-included misdemeanors. Finally, McGill alleged that misjoinder of his bribery and tax offenses necessitated a new trial. The trial judge denied these motions. *United States v. McGill*, No. 90–144–01, 1991 WL 12346 (E.D.Pa. Jan. 24, 1991).

The Government filed an appeal in this court challenging the two-level reduction for acceptance of responsibility; McGill cross-appealed both his convictions and the denial of his post-verdict motions.

### B. *Facts*

McGill was charged in Counts 4 through 8 of the indictment with evading payment of $46,910 in personal income taxes. This figure encompasses assessed but unpaid taxes for the years 1980 through 1987, excluding penalties and interest.[6]

McGill is a self-employed attorney in Philadelphia. During the decade 1980 through 1990, he received income from three sources: private criminal defense work, for which he was paid in cash and by personal check; court appointments to represent indigent criminal defendants, for which he was paid, upon submitting vouchers, by the City of Philadelphia (the City); and service as an appointed member of a Pennsylvania commission,[7] for which he received a stipend from the Commonwealth.

For each of the years 1980 through 1987, McGill filed federal income tax returns indicating taxes due. There is no dispute as to the accuracy of McGill's tax forms. However, he failed to include with his returns payment of any of the tax which he admittedly owed.[8]

In 1983 the Internal Revenue Service (IRS) directed McGill to pay his 1978 taxes and file returns for the years 1979–1982. He submitted the overdue returns, and acknowledged amounts due, but remitted no payment. The IRS then in 1984 issued levies against McGill's two personal bank accounts. The banks informed the IRS that no funds were available in ·these accounts. In May 1985, the IRS again issued levies against McGill's two personal bank accounts, and also against McGill's fees from the Commonwealth and the City. McGill was aware of the levies from the time they were imposed, as he acknowledged in a meeting with the IRS in late May 1985.

After the 1985 levies were imposed, McGill ceased using his personal bank accounts. Those accounts were later closed by the banks. McGill deposited and wrote checks on an account in his wife's name[9] (the Lillie account) and on a joint account which he and several other lawyers had established for the purpose of handling common expenses for office space they shared (the McGill & Seay account).[10] The

---

6. The total figure, including penalties and interest, was $121,004 as of the time of trial.

7. McGill served as a representative to the Commissioner of the Pennsylvania Human Relations Commission, a position which he resigned in February of 1990.

8. McGill followed the same procedure in 1978 and 1979, but those years were not included in the indictment.

9. McGill's wife is also an attorney who has held positions with the federal government and with the City of Philadelphia.

10. This account was previously named "Clark, McGill & Seay," but was renamed "McGill & Seay" in May 1985, after Mr. Clark had broken off his professional association with Mr. McGill and Mr. Seay. Joint App. at A–2003.

IRS had no record of the Lillie and the McGill & Seay accounts.[11] McGill testified that he used the family and the business accounts because he thought his two personal accounts had been closed. At the same time, he admitted at trial that he used the business account "thinking that the IRS wouldn't bother the money." Joint App. at A–2102.

McGill made one attempt in 1986 to settle his debts with the IRS: he hired an attorney and prepared an Offer In Compromise (OIC) of his tax liability. He filed financial disclosure forms in connection with the OIC in late May 1986. The record contains conflicting information about the adequacy of the disclosure forms, none of which is before us. IRS Agent Kroll assured the trial court that McGill had provided him with information about all bank accounts, Joint App. at A–1198, but the Government alleged in oral argument that McGill failed to include the McGill & Seay account with the filing. The OIC was finally withdrawn after the IRS suggested that the proposed level of payment was too low.[12] The IRS further noted that McGill had made no effort to pay his current year's (1986) estimated taxes, a prerequisite for a good faith OIC. McGill asserted that he could not pay his 1986 taxes because most of his earnings—his income from the Commonwealth and the City—were subject to IRS levies.

During the period from January 1986 until January 1987, when the OIC was being negotiated, McGill on the advice of counsel did not submit expense vouchers to the City. Thus, the IRS received no levy payments from the City in that year. McGill submitted the entire year's vouchers—worth approximately $5,000—after he withdrew his Offer In Compromise. Of this amount, approximately $3,700 went to the IRS. Joint App. at A–1987–88.

In 1987, McGill sent a $3,000 check to the IRS. He was seeking election to a local judgeship at the time. This was the only non-levy payment McGill made to the IRS between April 1985 and March 1990, the period relevant to the indictment.[13]

In March 1988, the Government instituted a criminal tax investigation of McGill. McGill continued to accept court appointments from the City. The IRS kept the income levied from these City appointments in a "suspense account" while pursuing the criminal charges. At the time of trial, the suspense account contained nearly $30,000.[14] None of these funds was allocated toward McGill's liability for the tax years charged in the indictment (1980 through 1987).[15]

In about August 1988, five months after the Government initiated its criminal investigation, McGill opened a checking account in his own name at the Philadelphia Savings Fund Society (the PSFS account). He testified at trial that he opened the account "because my attorney advised me that questions were being raised about my use of the McGill & Seay account." Joint App. at A–2112–13. The IRS was not initially aware of the PSFS account.[16]

11. The Government asserts that McGill did not inform the IRS of either account when he filed financial statements in connection with his OIC. We cannot rule on this allegation, as the entire OIC file was withheld from the jury.

12. McGill proposed paying $16,000 on a debt then amounting with penalties and interest to approximately $70,000.

13. In fact, the $3,000 was the only voluntary payment McGill made to the IRS during the decade 1980–1990.

14. McGill alleges that the fund contained nearly $45,000. It appears that some of the City payments were never received by the IRS.

15. The IRS has a policy of holding levied income in a separate account until criminal investigations are concluded. During the criminal investigation, the IRS applied approximately $22,000 of McGill's ongoing levy receipts to his delinquent 1978 and 1979 taxes. These years were not part of the indictment. The 1978 taxes, plus penalties and interest, were paid off in 1987, and the 1979 tax liability was finally discharged in 1989.

16. The IRS claims that they should have been notified of the PSFS account. At trial, however, a former IRS employee testified that a taxpayer does not have an obligation to volunteer information to the IRS, even where the information contained in a previously-filed financial statement has changed. Joint App. at 1819 (Cedrone testimony). As noted *infra*, we decline to impose an affirmative reporting duty, as opposed to a duty to respond truthfully, upon taxpayers who are in arrears in their payments.

At about the same time, approximately $9,000 of McGill's fees from the City were not captured by the IRS levy but were sent directly to him. McGill contacted the City Comptroller's Office to inquire about his receipt of these funds. Joint App. at A–2099. As a result, the remaining $1,000 then due to him from the City was sent directly to the IRS. It appears that McGill deposited the $9,000 in one of his accounts and did not forward any part of it to the IRS.[17] He did, however, claim that he declared the money as income on his income tax return for that year. Joint App. at A–2100.

In the fall of 1989, McGill took a part-time job as a law clerk to a Philadelphia judge, at a salary of about $25,000. He has also continued to take court appointments from the City.

The total amount of moneys which the IRS levied from McGill during the period up to his trial is in dispute. The IRS contends that a total of $57,746.88 was levied. McGill claims that the total levy was over $75,000. The main part of the discrepancy apparently lies in certain fees which the City has indicated were sent to the IRS but which at the time of McGill's trial had not been recorded as received by the IRS.

## II.

McGill was charged under 26 U.S.C. § 7201 with five counts of attempted evasion of payment of tax. He was convicted of three counts of felony evasion and of two counts of the lesser offense of willful failure to pay taxes under 26 U.S.C. § 7203.

The elements of the felony of attempted evasion of payment of tax under § 7201 are three: 1) the existence of a tax deficiency, 2) an affirmative act constituting an attempt to evade or defeat payment of the tax, and 3) willfulness. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). Willful failure to pay tax under § 7203 contains two ele-

ments: 1) failure to pay a tax when due, and 2) willfulness. *See id.*

### A. *Tax Deficiency*

The first element in a § 7201 offense is a tax due and owing. *Sansone,* 380 U.S. at 351, 85 S.Ct. at 1010. There is no dispute that McGill owes taxes in the amount of $46,910. He has contemporaneously satisfied the first element of § 7203, by failing to pay the amounts owed according to the returns he has filed.

### B. *Affirmative Acts*

■ Section 7201 further requires proof of an affirmative act of evasion. One act will suffice. *United States v. Conley,* 826 F.2d 551, 556–57 (7th Cir.1987). McGill argues that the Government did not prove that he committed affirmative acts of evasion during each time period charged. The Government asserts that McGill met the threshold for felony evasion under § 7201 when 1) after learning that the IRS had placed a levy on his assets to recover unpaid taxes, he ceased using the personal bank accounts and instead deposited and withdrew money from the Lillie and the McGill & Seay accounts; and 2) he opened the PSFS account without informing the IRS and deposited $9,000 in fee checks from the City. Additionally, the Government maintains that the jury could have inferred affirmative acts of evasion from the consistent pattern of cash withdrawals from the Lillie account, even after deposits attributable to McGill had ceased.

■ Our review of the sufficiency of the evidence is "governed by strict principles of deference to a jury's findings." *United States v. Ashfield,* 735 F.2d 101, 106 (3d Cir.), *cert. denied, sub nom. Storm v. United States,* 469 U.S. 858, 105 S.Ct. 189, 83 L.Ed.2d 122 (1984). When a motion for judgment of acquittal brought on a claim of insufficient evidence to support a conviction is denied, this court must sustain the verdict if "any rational trier of fact could have found the essential elements of the

---

**17.** The record does not in fact contain direct evidence of the fate of the $9,000. *See* text of footnote 24, *infra.*

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis omitted). *See also United States v. Coleman*, 862 F.2d 455, 460–61 (3d Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989). The reviewing court must simply determine whether "the conclusion chosen by the factfinders was permissible." *Ashfield*, 735 F.2d at 106.

### 1. Evasiveness

McGill alleges that the charged acts—the use of the Lillie and the McGill & Seay accounts, and the opening of the PSFS account—are not affirmative acts of evasion within the meaning of 26 U.S.C. § 7201.

■ An affirmative act is anything done to mislead the government or conceal funds to avoid payment of an admitted and accurate deficiency. *Cohen v. United States*, 297 F.2d 760, 762 & 770 (9th Cir.), *cert. denied*, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962). The offense is complete when a single willful act of evasion has occurred. *See United States v. Conley*, 826 F.2d 551, 557 (7th Cir.1987). Section 7201 explicitly refers to "attempts [to evade] in any manner." 26 U.S.C. § 7201. Generally, affirmative acts associated with evasion of payment involve some type of concealment of the taxpayer's ability to pay his or her taxes or the removal of assets from the reach of the Internal Revenue Service. *See* Joint App. at A–225. Thus, "any conduct, the likely effect of which would be to mislead or to conceal" is sufficient to establish an affirmative act of evasion. *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

■ Section 7201 encompasses two kinds of affirmative behavior: the evasion of assessment and the evasion of payment. Evasion of assessment cases are far more common. The affirmative act requirement in such a case is satisfied, *inter alia*, with the filing of a false return. *See, e.g., Sansone*, 380 U.S. at 351–52, 85 S.Ct. at 1010–11. If the false filing is shown to be willful, the offense is complete with the filing.

*See id.* Evasion of payment cases are rare, and the required affirmative act generally occurs after the filing, if there is a filing at all. *United States v. Mal*, 942 F.2d 682, 687 (9th Cir.1991) (evasion of payment "involves conduct designed to place assets beyond the government's reach *after* a tax liability has been assessed") (emphasis added). McGill was charged with evasion of payment.

■ Affirmative acts of evasion of *payment* include: placing assets in the name of others; dealing in currency; causing receipts to be paid through and in the name of others; and causing debts to be paid through and in the name of others. For example, in *Spies*, the petitioner "insisted that certain income be paid to him in cash, transferred it to his own bank by armored car, deposited it, not in his own name but in the names of *others of his family*, and kept inadequate and misleading records." The Supreme Court found this evidence sufficient to sustain a finding of attempted evasion. *Spies*, 317 U.S. at 499, 63 S.Ct. at 368 (emphasis added). In *Conley*, the Court of Appeals for the Seventh Circuit affirmed a § 7201 conviction where the defendant placed assets in his sons' names, deposited his assets with others, dealt in currency, and paid creditors but not the government. *Conley*, 826 F.2d at 557. *See United States v. Voorhies*, 658 F.2d 710, 714 (9th Cir.1981) (affirming § 7201 conviction where defendant travelled out of country on three occasions in one year, carrying over $80,000 in negotiable assets, did not declare these amounts to customs, and was later unable to account for use of large amount of cash and gold coins); *United States v. Hook*, 781 F.2d 1166 (6th Cir.) (affirming § 7201 conviction where the defendant did most of his business in cash, used credit cards belonging to others, and bought a house in his girlfriend's name), *cert. denied*, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986). *See also United States v. Shorter*, 809 F.2d 54, 57 (D.C.Cir.) (affirming § 7201 and § 7203 convictions where defendant carried on a "cash lifestyle"), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987).

■ Merely failing to pay assessed taxes, without more, however, does not constitute evasion of payment, though it may satisfy the requirements for the willful failure to pay taxes under § 7203. *Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010; *United States v. Romano*, 938 F.2d 1569, 1573 (2d Cir.1991). Only affirmatively evasive acts—acts intending to conceal—are punishable under § 7201.[18]

### 2. Timing

■ Before we apply the law of affirmative acts to the facts of this case, we must consider an additional issue raised by the parties: whether affirmative acts in an evasion of payment situation can pre-date the existence of a tax deficiency. The Government argues that the crime of evasion of payment is not technically complete until a tax deficiency exists, though a taxpayer's prior acts may be credited toward that year. McGill counters that the indictment in this case required the jury to disregard prior acts, regardless of whether past behavior may have been relevant. Neither party misstates the law: a prior act may suffice to prove evasiveness in particular circumstances. *E.g., United States v. Shorter*, 809 F.2d 54, 57 (D.C.Cir.1987) (court permitted government to join twelve years' tax payment evasion in a single indictment; defendant's activities evidenced a "continuous course of conduct," and "each affirmative act of tax evasion was intended to evade payment of all taxes owed, *or which appellant expected to owe*, at the time of the affirmative act.") (emphasis added); *United States v. Hook*, 781 F.2d 1166, 1170 (6th Cir.1986) (limiting relevant acts under § 7201 to those occurring after assessment "would thus preclude felony prosecutions against those taxpayers who had the foresight to file accurate tax returns and commit acts of concealment of assets prior to assessment"). *But see Mal*, 942 F.2d at 688 (Court of Appeals for the Ninth Circuit suggests that relevance of acts may be determined by occurrence relative to assessment of tax deficiency: "if a defendant transfers assets to prevent the IRS from determining his true tax liability, he has attempted to evade assessment; if he does so after a tax liability has become due and owing, he has attempted to evade payment.")

However, as McGill correctly notes, we do not need to decide whether affirmative acts can predate the existence of a tax deficiency here. In this case, the indictment limited relevant activity to periods *after* deficiencies were assessed. McGill's evasive activity allegedly *began* on certain dates—either the day the taxes were due, or the day the tax forms for those years were filed.[19] The indictment charged McGill with evading his 1980–83 and 1984 taxes beginning on or about April 15, 1985 (Counts 4 & 5); his 1985 taxes beginning on or about April 15, 1986 (Count 6); and his 1986 and 1987 taxes beginning on or about May 15, 1988 (Counts 7 & 8). The indictment by its terms required the jury to look forward in time for evidence of affirmative acts. The Government must prove attempted evasion for each count beginning at the dates cited above. No prior acts were to be considered under this element of the offense.[20]

**18.** The government advises its attorneys that "[o]bstinately refusing to pay taxes due, possession of the funds needed to pay the taxes, or even the open assignment of the income, without more, merely constitute a willful failure to pay taxes.... They do not meet the requirement of the affirmative act necessary for an evasion charge." U.S. Dept. of Justice, *Criminal Tax Manual*, § 8.04 at 8–7, 8–8 (6th ed. 1985); Joint App. at A–229–30.

**19.** The tax indictments, all identical, read:
*Beginning on or about [date]*, and continuing to the present, in the Eastern District of Pennsylvania, the Defendant
 Thomas L. McGill, Jr.

did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by him to the United States of America ... in violation of Title 26, United States Code, Section 7201.
Joint App. at A–31–35 (emphasis added).

**20.** Prior acts are certainly relevant in determining whether a *current* act is evasive. Further, prior acts are always relevant in the assessment of willfulness. *United States v. Dixon*, 698 F.2d 445, 447 (11th Cir.1983). The issue here, however, is whether they may also substitute for the proof of a current act.

The Government's presentation of evidence at trial does not contradict this interpretation of the indictment. *See* Parts II. B.3 & 4, *infra.* Thus, on review, we must reverse McGill's convictions if there is no evidence from which the jury might infer actively evasive behavior after the specific dates charged in that particular count of the indictment.

### 3. Acts of Evasion: Count 6

■ For Count 6, the alleged act of evasion is McGill's use of certain bank accounts beginning on April 15, 1986. After the IRS issued levies on both of McGill's personal bank accounts in 1985, he ceased using those accounts and instead deposited funds into and drew checks on the Lillie account and the McGill & Seay account.

IRS Special Agent Isabella performed a detailed analysis of the Lillie and the McGill & Seay accounts. Transactions attributable to McGill and general cash transactions (unattributable to a specific individual) for these two accounts are briefly summarized below.

*Lillie Account–Activity Attributable to McGill*

| | Deposits by McGill | Cash In/Out by All Users |
|---|---|---|
| 1985 | $26,487 (45%) * | $8,400/$5,890 |
| 1986 | 12,341 (23%) | 6,815/4,360 |
| 1987 | 19,733 (32%) | 4,560/4,870 |
| 1988 | 1,346 (3%) | 3,245/4,130 |

\* Percentage of total deposits attributable to McGill. Figures in the first column do not include cash transactions.

*See* Joint App. at A–1592–1601, A–1607–08 (Isabella testimony); Supp. App. at 135–78.

*McGill & Seay Account–Activity Attributable to McGill*

| | Deposits by McGill | Cash In/Out by All Users |
|---|---|---|
| 1985 | $ 6,840 (45%) | $ 700/N/A |
| 1986 | 21,638 (47%) | 4,150/N/A |
| 1987 | 15,437 (39%) | 3,615/N/A |
| 1988 (Jan.–Mar.) | 2,935 (42%) | 1,140/N/A |

**21.** McGill refers here to his personal bank account at Provident National Bank. The McGill

*See* Joint App. at A–1609–15 (Isabella testimony); Supp. App. at 179–90.

McGill's use of the Lillie account decreased between 1985 and 1988, in both absolute dollars and as a percentage of total deposits. His use of the McGill & Seay account is more sporadic. Agent Isabella testified that McGill used the accounts "as you and I would use our own personal checking accounts." Joint App. at A–1616.

McGill testified that he knew once the levies took effect that any money he put into an account in his own name "would be taken." He put funds into the McGill & Seay account "thinking that the IRS wouldn't bother the money." Govt.App. at A–501; Joint App. at A–2102. He admitted that he saw income taxes as "another bill that I didn't have the money to pay." Joint App. at A–1998.

On the other hand, he also testified that he thought his two personal bank accounts had been closed by the banks after the levies were imposed:

> Thinking that [one of the personal accounts] was closed and that the Provident Bank account [21] was closed, I still had bills to pay. I had office expenses, as well as expenses at home that had to be paid and so I began using the McGill [ & Seay] account to pay business expenses and the account—my wife's account to pay bills at home.

Joint App. at A–464. Agent Isabella admitted that there were no luxury items on the list of expenses paid from the Lillie account on behalf of McGill. Joint App. at A–1626. McGill himself commented that he did not lead a luxurious lifestyle, Joint App. at A–1933–34, and that he "wasn't trying to escape anything." Joint App. at A–2029.

The Government alleges that McGill's shift in bank accounts constituted an affirmative act of evasion of payment. McGill did not tell the IRS of the existence of the Lillie and the McGill & Seay ac-

& Seay account was also with Provident, though

counts.[22] The Government argues that it could not have discovered the accounts because his wife's name was "different from his," and "that the McGill & Seay account bore McGill's surname made it no more identifiable as his than would be the case for any other account bearing that not-uncommon name."

McGill counters that the use of these accounts cannot be an affirmative act because he did not act with evasive intent. He argues that it is unlikely one could "conceal" assets in an account partially in one's own name (McGill & Seay) or in an account bearing the name of one's spouse, especially when these accounts were fully reachable by the IRS. At trial, IRS Special Agent Kroll, who reviewed McGill's OIC, testified that he did not believe that McGill was concealing any information about the money he was receiving. Govt.App. at A–166. Further, Kroll admitted that he did not ask McGill where he banked, instead "assuming" that McGill was using his "attorney's" account. Joint App. at A–162, A–164.

▮ We are not presented here with evasion of the magnitude of *Spies, Voorhies*, or *Conley, supra.* However, in *Spies*, the Supreme Court specifically included as an affirmative act of evasion deposits into an account registered to a family member. *Spies*, 317 U.S. at 499, 63 S.Ct. at 368. The *Conley* court found similar conduct objectionable. *Conley*, 826 F.2d at 557 (defendant used his son's name on a bank account he opened for personal use). Banking under the name of one's spouse satisfies the affirmative act requirement under § 7201. By analogy, banking through a business account containing the names of others also suffices as an affirmative act.

Thus, based on the rationale of *Spies* and *Conley*, the evidence is sufficient for the jury to find an act of evasion for, at minimum, Count 6. Any evasive behavior after April 15, 1986, satisfies the affirmative act requirement for this charge. McGill's substitute use of the Lillie and the McGill & Seay accounts began in mid–1985 and continued through to early 1988. While McGill's argument concerning a lack of evasive intent is perhaps plausible, a jury could have found evasive intent from his testimony ('I thought the IRS wouldn't bother the money') and his failure simply to set up another account in his own name. McGill's challenge to the sufficiency of the evidence of an act of evasion for Count 6 will be denied.

### 4. Acts of Evasion: Counts 7 & 8

▮ McGill also disputes the Government's evidence of affirmative acts after May 15, 1988, the crucial period for Counts 7 and 8. The Government alleges that McGill opened the PSFS account in August of 1988, five months after the criminal investigation into his tax affairs had begun, and failed to report this account to the IRS. McGill allegedly deposited $9,000 of levied City fees into this account without forwarding any of the money to the IRS.

▮ We find that, unless a taxpayer is in the situation of giving voluntary admissions during an investigation or a forced response to a subpoena, the failure of the taxpayer to report the opening of an account in his or her own name in his or her own locale cannot amount to an affirmative act of evasion. Omissions, including failures to report, do not satisfy the requirements of § 7201; the Government must prove a specific act to mislead or conceal. *See Spies*, 317 U.S. at 499, 63 S.Ct. at 368; *Romano*, 938 F.2d at 1572–73 (failure to report income is not by itself an affirmative act of evasion). McGill testified that he opened the account on the advice of counsel in response to IRS criticism for banking under the names of others. Joint

---

with another branch. Supp.App. at 134j; Joint App. at A–1574.

**22.** There is evidence that McGill was asked and failed to disclose the existence of a "business account" to the IRS, either under the name McGill & Seay or Clark, McGill & Seay. While on the facts of this case an "omission" of this sort cannot amount to an affirmative "act" of evasion under § 7201, the information is relevant to a determination of willfulness. *See* Part II.C., *infra*.

App. at A–2005, A–2112–13. There is no evidence that McGill concealed this new account from the IRS apart from the fact that he did not inform the IRS of its existence.

 The Government also cites as an affirmative act of evasion McGill's retention, allegedly in 1988, of $9,000 in City checks subject to levy. This action, if it occurred, does not suffice as an affirmative act under § 7201. Supposedly, McGill received the funds and deposited them into the PSFS account, an act necessarily occurring after August 1988 when the account was opened. By extension of our holding above, however, the deposit of funds into an account in one's own name cannot be an affirmative act of evasion. Thus, on the facts presented by the Government, there was no evidence that McGill attempted to conceal these funds.[23]

In fact, McGill inquired as to why the City had sent the $9,000 to him; the City replied that it should not have done so and it forwarded the remaining $1,000 due McGill directly to the IRS.[24] Joint App. at 2099. Moreover, McGill apparently reported the money as income on his tax returns. Joint App. at 2100. Though he did not surrender the money, he was not ordered to do so, and it appears that he had no affirmative obligation to report its receipt, albeit he did have an obligation to pay his taxes. See e.g., Joint App. at A–229–30.[25]

The Government argued at trial, in further support of Counts 7 and 8, that McGill's use of the Lillie and the McGill & Seay accounts continued past May 15, 1988, and that this continued use amounted to an affirmative act of evasion. Specifically, Agent Isabella testified that there were nine checks written from the Lillie account on McGill's behalf during 1988, and that automatic teller withdrawals from this account continued in proportion to years past. We find these arguments to be without merit.

The burden of proving an evasive act is on the Government. In regard to the $9,000 payment, the Government has not demonstrated that the $9,000 was ever deposited into the Lillie or the McGill & Seay accounts—either as proof of the offenses charged in Count 6 or of the offenses charged in Counts 7 and 8. Nor has the Government presented evidence that the $9,000 was deposited into or otherwise handled by McGill after May 15, 1988, in such a fashion as to constitute an act by him to mislead the Government or conceal the funds.

In the absence of any such proof of an evasive act, we decline to assume that the jury could have reasonably found McGill's treatment of the $9,000 to be affirmatively evasive.

---

**23.** We note that there is no clear proof in the record of the date McGill received the $9,000. IRS Agent Dollard noted in a letter to defense counsel, without mentioning the source of his information, that McGill deposited $9,200 in the PSFS account, Supp.App. at 364, which was not opened until 1988. During oral argument to this court, however, defense counsel asserted that the $9,000 was received in 1987 and most likely deposited in either the Lillie or the McGill & Seay account. In any case, McGill admits receiving $9,000 in levied City fees, and depositing the checks in a checking account. Joint App. at A–2099.

Unlike the Lillie and the McGill & Seay accounts, we have no deposit analysis for the PSFS account, so we cannot know which party's assertions are correct. McGill's testimony refers only to $9,000 mistakenly-received in "one year," without a specific date. Joint App. at A–2099–100. He stated that, during this time, $9,000 went to him and "the rest of the money, another $1,000 or so, went to the IRS." Joint App. at A–2099. Though McGill testified that he filed the $9,000 in his 1099 tax return that unknown year, Joint App. at A–2100, the record does not contain such a return. We do not know the source of Agent Dollard's assertion to defense counsel that McGill deposited $9,200 in the (1988) PSFS account. McGill's W–2 form from the *Commonwealth* for 1988 discloses income totalling $10,200, but the Government had maintained throughout, and McGill himself testified, that the mistakenly-received funds were payments from the *City*, not from the Commonwealth.

**24.** In fact, the 1985 levy issued on McGill's fees from the City was supposed to catch only those funds due McGill at that time. The levy was designed, not as an ongoing wage levy, but as an accounts receivable instrument. See Joint App. at A–1200; A–1155, A–1162. Revenue Officer Kroll acknowledged that the City was not technically required to remit future sums to the IRS, and that McGill had never told the City to stop sending payments. Joint App. at A–1201.

**25.** McGill's failure to turn over the $9,000 to the IRS might, if willful, be a violation of § 7203. Without an affirmative act to mislead the government or to conceal the funds, however, such a failure to turn over the money would not be a violation of § 7201.

On the facts of this case, McGill's use of the Lillie account becomes affirmative evasion only when he uses it to conceal his own funds. The jury could not conclude beyond a reasonable doubt that there were deposits of McGill's funds into the Lillie and McGill & Seay accounts after May 15, 1988. Nor could it conclude beyond a reasonable doubt that any of the funds in these accounts on and after that date were funds of McGill. The jury therefore could not find an affirmative act of evasion even if funds were disbursed from those accounts for the sole benefit of McGill. IRS Agent Isabella testified that the last deposit in the Lillie account of an item payable to McGill occurred on February 16, 1988. Joint App. at A–1598. Moreover, we have no evidence that McGill took in any cash payments from private clients after May 15, 1988. If such payments existed, the evidence should have been easy to produce, as McGill's secretary testified that she issued a receipt for each cash payment received. Joint App. at A–1541; A–1551. Finally, there were cash transactions through the Lillie account during 1988, but there is no indication how many, if any, occurred after May 15. Assuming there was activity beyond May, none of the transactions has been affirmatively linked to McGill. The record contains only total deposit and withdrawal figures for all users in 1988.

Thus, the record contains no evidence that identifiable McGill transactions continued with respect to the alternative accounts after May 15, 1988.[26] No jury could have found beyond a reasonable doubt that the evidence after May 15, 1988 sufficed to prove evasion under § 7201.

The Government did not meet its burden of proving evasive acts for Counts 7 and 8. We will, therefore, reverse McGill's convictions on Counts 7 and 8, for insufficient evidence of affirmative acts of evasion during the relevant period.

5. Jury Instructions on Affirmative Acts

Alternatively, McGill argues that the jury instructions on affirmative acts were

faulty on several grounds, and for this reason he requests that we grant him a new trial. He contends, first, that the initial instructions were misleading—they suggested to the jury that a mere failure to pay taxes could constitute an affirmative act of evasion. Subsequent "amplification" by the court allegedly did not cure this fault. Second, McGill asserts that the charge did not include any affirmative acts of evasion relating to Counts 7 and 8 (1986 and 1987 tax years). The 1986 and 1987 taxes were delinquent as of May 15, 1988, the day the returns for both years were filed, and the only evasive behavior mentioned in the *charge* occurred prior to that date. Third, the judge instructed the jury that evasion of payment of tax was complete at the time a tax return is filed, while the Government's case focused on behavior subsequent to each filing.

We review jury instructions only to discern whether they are an accurate representation of the law. *See United States v. Santos*, 932 F.2d 244, 247–50 (3d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 592, 116 L.Ed.2d 617 (1991). Specifically, we review the charge to determine "whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury," and reverse "only if the instruction was capable of confusing and thereby misleading the jury." *Link v. Mercedes–Benz of North America, Inc.*, 788 F.2d 918, 922 (3d Cir.1986). *See In re Braen*, 900 F.2d 621, 626 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991) (reviewing court must consider charge as whole); *Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135, 138 (3d Cir.1985). Where resolution of a jury instruction issue turns on "statutory construction involving the interpretation and application of legal precepts," this court's review is plenary. *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

**26.** Evidence relating to the McGill & Seay account ends on March 4, 1988, making this account irrelevant to proof of affirmative acts under Counts 7 and 8.

a.

■ The jury was instructed twice on the tax charges. After the jury returned from a deadlock with questions, the trial judge repeated his initial instructions with modifications. Regarding affirmative acts, he stated:

The first element of the offense which the Government must prove is an affirmative act constituting an attempt to evade or defeat taxes. A tax deficiency exists from the date a return is due to be filed, April 15th following each taxable year, for the calendar years up to and including 1983 through 1987 as named in the indictment.

If you find that the defendant furnished information to his accountant showing the amount of income received for each year, signed and mailed or delivered a return for each year to the Internal Revenue Service Center showing the amount of taxes due; *and secondly, that there was an affirmative act to attempt to evade or defeat the payment of taxes,* yet willfully failed and refused to pay the taxes shown thereon to be due, the offense is complete for each year when the return is filed on or about April 15th and the taxes are not paid. *The affirmative act alleged by the Government was the diversion of the defendant's income from accounts in his name only to other accounts; specifically, the McGill and Seay account, and the Charisse Lillie account.*

Joint App. at A–2355 (paragraphing as in original instructions on A–2294). The italicized portions were added after complaints by the defense and queries by the jury. Specifically, after the initial instructions the jury returned with two questions, 1) "Should we consider failing to file a return evasion of taxes as it applies to count four?" [tax years 1980–83, filed in 1985] and 2) "Is failing to include a check with your filed taxes simple evasion?" Joint App. at A–2354. The court answered both questions "clearly no." *Id.*

Without proof of willfulness and, for § 7201, proof of an affirmative act of evasion, a taxpayer cannot be convicted of violating §§ 7201 or 7203. *See Spies, supra; United States v. Masat,* 896 F.2d 88, 98–99 (5th Cir.1990) (reversal of conviction required where jury was left with the impression that failure to file plus willfulness would be sufficient to convict under § 7201). The jury's confusion on this very fundamental issue indicates that the initial instructions were inadequate in making this clear.

We conclude that any inadequacy was cured by the subsequent reinstruction, however. The judge's reinstruction emphasized that to convict of a felony there must be "an affirmative act to attempt to evade or defeat the payment of taxes." Joint App. at A–2355. The judge also told the jury before he reread the instructions that a failure to pay was not enough. Joint App. at A–2354. The need for an affirmative act was adequately stressed.

b.

■ As further alleged error, McGill points out that the last sentence of the charge limits the relevant affirmative acts to McGill's use of the Lillie and the McGill & Seay accounts. There is no specific mention of the PSFS account, or of the alleged direct payment to McGill of $9,000 in City fees. McGill argues that this precludes any conviction for Counts 7 and 8, because the use of the Lillie and McGill & Seay accounts had ended prior to May 15, 1988. Because we will reverse McGill's conviction under Counts 7 and 8 for insufficient evidence of affirmative acts of evasion, we do not need to consider this point further. However, we do note that the court's failure to mention every allegedly evasive act would not have been fatal to the jury instructions. Courts are not required to enumerate all the specific factors that might exist, and the failure to do so does not constitute reversible error as long as the jury is not expressly or impliedly foreclosed from considering the issues. *See Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 494 (3d Cir.1985).

c.

■ The instructions regarding the timing of an affirmative act for each charge

are more troubling, though we find that any mistakes probably worked to McGill's benefit. In addition to failing initially to convey the necessity of an affirmative act, the third sentence of the original instruction indicates that the offense of evasion of payment is *complete* from the date the taxes are filed without payment. As McGill notes, this permitted the jury to look backward from the date of filing for each affirmative act, whereas the indictment required them to look forward. This misleading language was not taken out of the amended instruction.

■ However, we find that this error was harmless as to Counts 4, 5 and 6.[27] The instructions required a finding of an affirmative act for each count of the indictment. Count 6 of the indictment required the jury to find an evasive act after April 15, 1986. The jury could reasonably have found that the use of the substitute accounts after the levies took effect in 1985 was affirmatively evasive, despite the defendant's assertion that he did not think he was breaking any of the tax laws. The defendant's own testimony about the diverted funds—"I thought the IRS wouldn't bother the money"—supports such a finding. Moreover, as the use of substitute accounts began soon after April 15, 1985, the date relevant to Counts 4 and 5, the evidence was also sufficient for a reasonable jury to find, at minimum, that McGill had willfully failed to pay his taxes for the years 1980 through 1984. Any failure of the jury to match the acts of evasion with the years charged in Counts 4–8 worked to McGill's benefit because a correct match would almost certainly have resulted in a felony conviction on Counts 4 and 5, as well

as Count 6. We will not overturn a conviction where we are convinced that the error did not prejudice the defendant. *See United States v. Jannotti*, 729 F.2d 213, 220 n. 2 (3d Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). The strength of the evidence in the years relevant to Counts 4, 5 and 6 indicates that McGill was not prejudiced by the trial judge's instructions on affirmative acts.[28]

### C. *Willfulness*

Finally, conviction of evasion of payment under § 7201 requires proof that the defendant's behavior was willful.

■ "Willfulness" is the voluntary, intentional violation of a known legal duty. *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). The definition of willfulness is the same under both felony (§ 7201) and misdemeanor (§ 7203) tax charges. *United States v. Bishop*, 412 U.S. 346, 359–61, 93 S.Ct. 2008, 2016–18, 36 L.Ed.2d 941 (1973). *See Sansone*, 380 U.S. at 353–54, 85 S.Ct. at 1011–12. Under § 7201, the defendant has the duty not to act to evade his tax obligation. Under § 7203, the duty is simply to pay one's taxes. In both cases, willfulness may be inferred from a pattern of conduct, "the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

■ Willfulness is "closely connected" to the affirmative act element of § 7201. *See United States v. Romano*, 938 F.2d 1569, 1572 (2d Cir.1991). "Evidence of affirmative acts may be used to show willfulness, and the defendant must commit the

---

**27.** Though we have already concluded that the Government did not meet its burden of proof of affirmative acts for Counts 7 and 8, we note that the jury instructions were not harmless as to those two counts. The "complete when filed" language pointed the jury backward from May 15, 1988. The jury could have inferred evasive behavior from McGill's activities in this earlier period. In fact, in light of the language of the indictment the jury was supposed to look at McGill's activity *after* May 15, 1988, where there is insufficient evidence of evasive behavior.

**28.** Our decision in *Nicola v. United States*, 72 F.2d 780 (3d Cir.1934), does not detract from this conclusion. McGill cites *Nicola* for the requirement that incorrect instructions must be "withdrawn" before subsequent corrections will be effective. *Nicola*, 72 F.2d at 787. In that case, successive instructions were internally inconsistent, citing mutually exclusive time frames for the relevant activity (allotment of a sales commission). There, it was necessary to withdraw the first instruction before issuing another. Here, the reinstruction was a clarification, not a contradiction.

affirmative acts willfully to be convicted of tax evasion." *Id.* Under § 7201, "if the affirmative act element is satisfied, there is no question that willfulness is also present." *Id.* Because we have determined that the Government did not prove an affirmative act for Counts 7 and 8, we do not reach the willfulness inquiry for those charges. We do reach the issue for Counts 4, 5 and 6, and find that the jury could reasonably have concluded that McGill acted willfully.

McGill also challenges the definition of willfulness in the jury instructions. He contends that his proposed instruction on willfulness would have focused the jury's attention on the necessary issue of whether he had specific knowledge that "his cessation of the use of the levied accounts and use of the other accounts constituted a violation of the tax laws." He argues that the instruction given on willfulness—"voluntary intentional violation of a known legal duty," Joint App. at A–2295—did not satisfy the requirement that a tax defendant is entitled to a particularized instruction concerning his actual knowledge of the tax laws. *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

■■■ McGill misreads *Cheek.* The Court in *Cheek* held that it is error to require, in order to negate willfulness, that "a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law" must also be objectively reasonable. *Id.* 111 S.Ct. at 610–611. The Court, in making its finding, elaborated on the application of this standard to the customary "voluntary intentional violation of a

known legal duty" definition of willfulness. In a situation in which the issue is whether the defendant knew of the duty purportedly imposed by the statute in question, the Government must prove actual knowledge of the pertinent legal duty, but this requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good faith belief that he was not violating any of the provisions of the tax laws. *Id.*

■■■ The District Court here did not give the erroneous instruction, given by the District Court in *Cheek,* that only an objectively reasonable misunderstanding of the law negates the statutory willfulness requirement. Rather, as noted above, the judge gave the jury the customary definition of willfulness: the voluntary intentional violation of a known legal duty. Moreover, the jury heard evidence from which it could consider whether McGill did in fact realize that he was violating the law, e.g., McGill's use of the Lillie and the McGill & Seay accounts because he thought "the IRS wouldn't bother the money," Joint App. at A–2102; his "overlooking" of his IRS debt on twelve financial disclosure forms filed with the Pennsylvania Ethics Committee, an arm of the state bar, from 1981 through 1987, Joint App. at A–2035–39; and his alleged failure to disclose the existence of a business account to the Collections Division of the IRS.[29] The jury could thus properly assess the good-faith of McGill's belief as to the legality of what he was doing, and could reasonably have found that McGill acted willfully as to Counts 4, 5 and 6.[30]

**29.** McGill submitted Forms 433–A (Collection Information Statement for Individuals) and 433–B (Collection Information Statement for Businesses) to the Collections Division on May 22, 1985. He made no mention of the shared-expense account on either form. *See* Govt. Exhibit 41 (Collections Division File on McGill), Forms 433–A (signed, undated) and 433–B (signed, dated 5/22/85). While we know that the McGill & Seay account did not exist under that name when McGill filed Form 433–B, we do not know whether the McGill & Seay precursor—the Clark, McGill & Seay account—was still open on May 22, 1985. However, if the jury were to believe McGill's testimony that the McGill & Seay account was simply renamed in

May 1985, *see* Joint App. at A–2003, and not conveniently opened two days after the disclosure forms were signed, then they could infer some willfulness from that omission.

**30.** McGill further challenges the trial judge's exclusion of certain evidence from the jury's consideration of willfulness. Specifically, the court instructed the jury that McGill's levy payments and his 1986 OIC were irrelevant to whether he knowingly violated his tax obligations. Even assuming that evidence of both the levies and the OIC might tend to prove that McGill did not act willfully, and that the trial judge's exclusion on these points was in error, we conclude that McGill did not suffer prejudice

## III.

### *Lesser Included Charge*

McGill alleges that the jury should never have been instructed that it could convict him of a lesser offense if it acquitted him of felony evasion. The trial judge gave the lesser included offense instruction at the request of the Government. Federal Rule of Criminal Procedure 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged." Fed.R.Crim.P. 31(c) (1972). Thus, "[i]n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifie[s] it ... [is] entitled to an instruction which would permit a finding of guilt of the lesser offense." *Sansone*, 380 U.S. at 349, 85 S.Ct. at 1009, citing *Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 687–88, 100 L.Ed. 1013 (1956). The elements of a § 7201 claim are 1) a tax deficiency, 2) an affirmative act of evasion, and 3) willfulness. A § 7203 claim is made out by showing 1) the failure to pay a tax that is due, and 2) willfulness.

McGill argues that § 7203 is not necessarily a lesser included offense within § 7201 because one element of the misdemeanor—failure to pay a tax—requires different proof than the parallel affirmative act of evasion under § 7201 which as the Court held in *Spies* cannot be the mere failure to pay. McGill argues that "failure to pay a tax" and "an affirmative act of evasion of payment" are not identical. However, McGill's argument overlooks the fact that it is exactly in the situation where proof of the affirmative act to evade payment fails, that the lesser included offense of willful failure to pay may become relevant.

Moreover, the willfulness inquiry is identical under §§ 7201 and 7203, *United States v. Bishop*, 412 U.S. 346, 360–61, 93 S.Ct. 2008, 2017–18, 36 L.Ed.2d 941 (1973), and courts addressing the lesser-included charge have repeatedly stated that § 7203 is included within § 7201.[31] *See United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir.1987) ("It is undisputed that § 7203 defines a lesser included offense of § 7201"). *See also Spies*, 317 U.S. at 495, 63 S.Ct. at 366 (in context of discussing the precursors to §§ 7201 and 7203, Court noted "[w]e

from the omission because of the considerable evidence which does support willfulness as to these counts.

The jury had evidence before it that McGill had negotiated with the IRS over a long period of time; clearly he was interested in solving his tax problems. The jury also knew that McGill made one voluntary payment of $3,000 near the time of the OIC. The jury knew as well that McGill voluntarily continued to take indigent cases after the IRS lien was in place. In addition, McGill testified at length to his intent to cooperate with the government to the fullest extent possible. If the $3,000 voluntary payment and the voluntary work for the City did not corroborate McGill's testimony about his state of mind for the jury, it is hard to believe that the same jury would have been impressed by an offer to pay a fraction of his tax liability and his failure to pay voluntarily *anything* on that tax liability in a year when he could presumably raise $16,000 to settle his tax obligations.

Further, the judge told the jury that McGill's inability to pay his taxes had no bearing on willfulness. McGill vehemently asserts that he never raised inability to pay as a defense to the evasion of payment charge, though he did assert inability to pay as a defense to the charge of

willful failure to pay. We decline to resolve the apparent split of authority as to whether a taxpayer's inability to pay should bear on the willfulness of his violations. *Compare United States v. Poll*, 521 F.2d 329, 332–33 (9th Cir.1975); *United States v. Andros*, 484 F.2d 531 (9th Cir. 1973); *United States v. Harper*, 397 F.Supp. 983, 990 (E.D.Pa.1975); *United States v. Goodman*, 190 F.Supp. 847, 854 (N.D.Ill.1961) *with United States v. Ausmus*, 774 F.2d 722 (6th Cir.1985); *United States v. Tucker*, 686 F.2d 230 (5th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982); *United States v. Lewis*, 671 F.2d 1025, 1028 (7th Cir.1982). Even if the inability to pay were relevant, the defense is unavailing to McGill, who could have altered his lifestyle and thus freed the money required to pay his tax obligations.

**31.** "Willfulness" is properly defined under both provisions as a "voluntary, intentional violation of a known legal duty." While § 7201 requires a voluntary and intentional violation of a known legal duty *to avoid affirmative acts of evasion* and § 7203 requires a voluntary and intentional violation of a known legal duty *to pay one's taxes*, the latter form of willfulness is necessarily included in the former form of willfulness.

think it clear that this felony may include one or several of the other offenses against the revenue laws"); *Sansone,* 380 U.S. at 349, 85 S.Ct. at 1009 (§§ 7201 and 7203, along with § 7202, have "obvious overlapping [between] them," and "there can be no doubt that the lesser-included offense doctrine applies to these statutes in an appropriate case").

None of the cases question that a tax deficiency is equivalent to a failure to pay a tax. *See Sansone,* 380 U.S. at 352, 85 S.Ct. at 1010–11 (Court notes that where there was a "conceded tax deficiency, ... if petitioner's act was willful, ... he was guilty of violating both §§ 7201 and 7203"); *De-Tar,* 832 F.2d at 1113 (Section 7201 "requires the same two [§ 7203] elements of willfulness and an unpaid tax, plus a third: an affirmative act constituting an evasion"). A § 7203 charge was therefore appropriate.

■ McGill points out that, unlike this case, the defendants in *Sansone* and *DeTar* requested a lesser-included charge.[32] This does not affect our conclusion. The court may give a lesser-included offense instruction, if deemed appropriate, without a request from either the defendant or the Government. 2 C. Wright, Federal Practice and Procedure: Criminal 2d, § 498 at 800 (2d ed.1982).

McGill further argues that the jury instructions on the lesser-included charge were inadequate. The judge told the jury that the elements of a § 7203 charge were 1) a duty to pay the tax, 2) the tax was unpaid, and 3) willfulness. As the Government notes, the first two requirements collapse into the "failure to pay a tax" element established in *Sansone* and *DeTar.* We believe that the charge as given fairly and adequately submits the issues in the case to the jury. *See Link v. Mercedes-*

*Benz of North America, Inc.,* 788 F.2d 918, 922 (3d Cir.1986).

■ Finally, McGill notes that the lesser offense was not included in the indictment. Defense counsel is charged, however, with notice that such a charge is permitted under Fed.R.Crim.P. 31(c). *United States v. Brewster,* 506 F.2d 62, 74 (D.C.Cir.1974). Thus, the court's instruction as to the § 7203 offenses was proper.

## IV.

### *Misjoinder*

■ Before trial, McGill moved under Fed.R.Crim.P. 8 for severance of the tax and bribery charges against him. The trial judge denied the motions. McGill alleges that he deserves a new trial because the motion was improperly denied. Federal Rule of Criminal Procedure 8(b) permits joinder of defendants alleged to have participated in the same series of acts constituting an offense. Fed.R.Crim.P. 8(b).[33] Its counterpart, Fed.R.Crim.P. 8(a), permits joinder of offenses against one defendant.

Under Rule 8(b), "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." Fed.R.Crim.P. 8(b) (1991). Under Rule 8(a), we look to whether the offenses charged are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a)

---

**32.** McGill did not request a lesser-included charge in this case, because he was concerned that the jury might reach a "compromise verdict" on his tax and bribery charges. Joint App. at A–2168. Ordinarily, the defendant insists upon a lesser offense instruction, and it can be reversible error not to so instruct where, as here, the lesser offense does not require extra proof.

**33.** McGill initially requested severance under both Rule 8(a) (permitting joinder of offenses against one defendant) and under Rule 8(b) (permitting joinder of defendants). *See* Joint App. at A–138–40. The trial judge denied both motions. Joint App. at A–144.

(1991). McGill's misjoinder claim implicates both sub-sections of Rule 8.

▮▮▮▮ This court must make an "independent determination" as to whether or not the joinder of counts under Fed. R.Crim.P. 8 was improper. *United States v. Somers,* 496 F.2d 723, 729 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). If the reviewing court determines that counts have been improperly joined, it must then apply a harmless error analysis, reversing the trial court if the misjoinder resulted in actual prejudice to the defendant. *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). In determining whether two offenses or defendants were properly joined, the reviewing court must look to the indictment and not the subsequent proof adduced at trial. *See United States v. Eufrasio,* 935 F.2d 553, 567 (3d Cir.), *cert. denied, sub nom. Idone v. United States,* — U.S. —, 112 S.Ct. 340, 116 L.Ed.2d 280 (1991).

The trial judge denied McGill's motion under Fed.R.Crim.P. 8(b), the provision permitting joinder of defendants. Most courts have held that Rule 8(b) applies exclusively to joinder questions in cases involving multiple defendants. *See United States v. Kopituk,* 690 F.2d 1289, 1312 (11th Cir.1982), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). The *Kopituk* court limited the application of Rule 8(a) to single-defendant cases. *See id.* McGill has pursued his misjoinder claim on appeal under Rule 8(b), as a result. However, McGill notes dicta in a case recently decided by this court, *Eufrasio, supra,* suggesting that the claim is more properly governed by Rule 8(a), joinder of offenses against a single defendant. Though we decline to adopt a new rule here, we briefly note the *Eufrasio* court's pertinent analysis.

In *Eufrasio,* this court suggested that Rule 8(a) might be an appropriate standard for the joinder of multiple offenses against one defendant, even in a multi-defendant case. In dicta, the court mentioned that "contrary to the jurisprudence in other circuits, when a joinder of offenses charged against the same defendant is challenged,

the literal meaning of the Rule [Rule 8] requires application of Rule 8(a), irrespective of whether multiple defendants are involved in the case." *Eufrasio,* 935 F.2d at 570 n. 20.

Rule 8(a) is seen to be more permissive of joinder than Rule 8(b), though both standards require a "transactional nexus" between the items or persons being joined. *Id.* Rule 8(a) additionally "permits joinder on an additional theory, that is when offenses 'are of the same or similar character.'" *Id.* But see *United States v. Grasso,* 55 F.R.D. 288, 291 (E.D.Pa.1972) (Rule 8(b) "series" is coextensive with Rule 8(a) "common scheme or plan").

The *Eufrasio* panel ultimately applied Rule 8(b), stating that it would not resolve the question of which Rule applied because the results of its analysis would be the same under either standard. *Id.* at 570–71 (joinder of RICO and non-RICO charges was proper where they constituted a series of related acts furthering a conspiracy and its purposes). We find the same to be true here. Even under the stricter "same act or transaction" standard of Rule 8(b), joinder in this case was proper.

The Government argues that McGill was engaged in an "enrichment scheme," evidenced by the cash payments arising out of the alleged bribery, the cash payments from his private clients, and his allegedly evasive use of the Lillie and the McGill & Seay accounts. Joinder under this rationale is acceptable. *See United States v. Rabbitt,* 583 F.2d 1014, 1021 (8th Cir.1978) (joinder proper where state legislator was charged with three counts of corruption), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *United States v. Pisani,* 590 F.Supp. 1326, 1345 (S.D.N.Y. 1984) (joinder of two defendants proper where perjury by one was committed in furtherance of fraud scheme of the other; joinder of perjury and obstruction of justice counts proper where part of same scheme). Joinder of tax and non-tax claims is not unusual. *E.g., United States v. Whitworth,* 856 F.2d 1268, 1277 (9th Cir.1988) (joinder proper where tax evasion results from the need to conceal the illegal pro-

ceeds gained from other criminal activity), *cert. denied,* 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989).

On the face of the indictment, the tax and bribery charges do not appear to have any connection. The tax indictments, all identical, read:

> Beginning on or about [date], and continuing to the present, in the Eastern District of Pennsylvania, the Defendant

### Thomas L. McGill, Jr.

> did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by him to the United States of America for the calendar year [date], in the amount of [amount], *by concealing and attempting to conceal from the Internal Revenue Service the nature, location, and extent of his assets,* and by placing funds and property beyond the reach of the Internal Revenue Service, in violation of Title 26, United States Code, Section 7201.

Joint App. at A–31–35 (emphasis added). Perhaps the underlined language hints at the possibility of a tax scheme. More likely that language is an attempt to capture the "affirmative evasive act" requirement under § 7201. The bribery indictment is limited to a discussion of the acts surrounding the alleged conspiracy to receive cash, and actual receipt of cash in 1986, from a particular "client." Joint App. at A–24–30. There is no cross-reference.

■■■ Trial judges may look beyond the face of the indictment to determine proper joinder in limited circumstances. Where representations made in pretrial documents other than the indictment clarify factual connections between the counts, reference to those documents is permitted. *See United States v. Serubo,* 460 F.Supp. 689, 693 (E.D.Pa.1978), *vacated on other grounds,* 604 F.2d 807 (1979). In *United States v. Gorecki,* 813 F.2d 40, 42 (3d Cir. 1987), this court made no mention of the "indictment" in deciding that joinder of firearms possession and drug dealing charges was proper under Rule 8(a), instead relying on "evidence" and "the record in this case." In the instant case,

the trial judge permitted the Government to "proffer" the evidence it would adduce at trial to connect the tax and non-tax charges. The Government, in its Response to McGill's Pre–Trial Motions, stated:

> The government would proffer that the evidence will show that Tom McGill demanded and received cash in payment for ostensible legal services, a portion of which were to be paid to Kenneth Harris in furtherance of scheme charged in Count One of the indictment herein. The government would further proffer that one of the means by which Tom McGill evaded payment of taxes as charged in the various tax counts set forth in the indictment was to demand cash in payment for legal services performed on behalf of clients. As such, the government contends that joinder in this indictment of the Title 18 [bribery] and Title 26 [tax] counts was proper.

Joint App. at A–143. This adequately satisfies the "same act or transaction" requirement of Rule 8(b). McGill's misjoinder claim thus cannot succeed.

### V.

#### *Conclusion*

For the reasons stated, we will reverse McGill's convictions of tax evasion under Counts 7 and 8, and affirm both the felony conviction under Count 6 and the misdemeanor convictions under Counts 4 and 5. Because we reverse Count 8, the count under which confinement in a community treatment center or half-way house, followed by home confinement, was imposed, we will remand this case to the District Court for resentencing on Counts 4 through 6, as the District Court may deem appropriate.

SCIRICA, Circuit Judge, concurring.

I join the majority opinion on Counts 4, 5, and 6. Although I concur in the judgment on Counts 7 and 8, I cannot join the majority's interpretation of § 7201's affirmative act requirement.

The majority holds that, "unless a taxpayer is in the situation of giving voluntary

admissions during an investigation or a forced response to a subpoena, the failure of the taxpayer to report the opening of an account in his or her own name in his or her own locale cannot amount to an affirmative act of evasion." Majority Typescript at 22. Extending this holding to the facts here, the majority concludes that, even assuming McGill deposited the $9,000 in City legal fees subject to levy in his PSFS account, there is insufficient evidence to support the jury's convictions on Counts 7 and 8. I cannot agree.

In *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943), the Supreme Court said that an "affirmative willful attempt [of tax evasion] may be inferred from ... any conduct, the likely effect of which would be to mislead or to conceal." This is an expansive definition, one which takes into account that not "all tax payment evaders approach their problem in the same way." *United States v. Conley*, 826 F.2d 551, 557 (7th Cir.1987). *See also United States v. Hook*, 781 F.2d 1166, 1169 (6th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986). Where there is sufficient evidence, the question whether conduct supports a legitimate inference of willful attempt to evade taxes is for the jury, *see Spies*, 317 U.S. at 500, 63 S.Ct. at 368, whose findings we must accord deference.

At the time McGill opened the PSFS account in August 1988, he was the target of a criminal investigation for tax evasion and had been the subject of five years of civil collection efforts by the IRS. The $9,000 the Government alleges he deposited in the PSFS account consisted of City legal fees which had escaped an IRS levy. Although McGill was aware these funds were subject to levy, he admitted expending them on personal and business items. Nevertheless, he claims to have reported them on his income tax return for that year.

I agree that, in the ordinary case, opening a personal banking account and depositing funds in it will not by itself amount to an affirmative act of tax evasion. But it seems to me that under the proper circumstances, this conduct may support a legitimate inference that a taxpayer has attempted to evade payment of federal tax liabilities. *Cf. United States v. White*, 417 F.2d 89, 92 (2d Cir.1969), *cert. denied*, 397 U.S. 912, 90 S.Ct. 910, 25 L.Ed.2d 92 (1970) (allowing jury to infer affirmative act of tax evasion from fact that defendant had "maintained a separate personal banking account in a neighboring town in which he deposited large amounts of [unreported] currency from unidentified sources").

Assuming McGill deposited the $9,000 in City legal fees subject to levy in the PSFS account, I would find these circumstances present here. Even though McGill claims to have reported the $9,000 on his tax return, because he was aware these funds were subject to levy and was the target of a criminal investigation for tax evasion at the time, I would hold that his deposit and expenditure of the $9,000 without first notifying the IRS supports a legitimate inference that he committed an affirmative act of tax evasion under § 7201. *See United States v. Eley*, 314 F.2d 127, 132 (7th Cir. 1963) (upholding jury instruction which listed as an "affirmative, willful attempt" to evade taxes the "fail[ure] during the course of an investigation to supply any information for purposes of a computation, assessment or collection of income tax when such failure is found ... to be unjustified").

However, because I agree with the majority that the Government has failed to meet its burden in establishing that McGill in fact deposited the $9,000 which had escaped the IRS levy in the PSFS account in August 1988, *see* Majority Opinion at 234, n. 24, I concur in the result on Counts 7 and 8.