UNITED STATES of America, Appellee,

v.

Benedetto ROMANO and Giuseppa Romano, Defendants,

Benedetto Romano, Defendant–Appellant.

No. 1373, Docket 90–1723.

United States Court of Appeals, Second Circuit.

Argued May 8, 1991.

Decided July 17, 1991.

Michael T. Cornacchia, Asst. U.S. Atty. E.D. New York (Andrew J. Maloney, U.S. Atty. E.D. New York, Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Murray Appleman, New York City (Stephen Latzman, of counsel), for defendant-appellant.

Before PRATT, MINER and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Defendant-appellant Benedetto Romano appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York, Joseph M. McLaughlin, *Judge*, after a bench trial on stipulated facts, on one count of income tax evasion in violation of 26 U.S.C. § 7201. Romano was sentenced to a term of imprisonment of 18 months, a fine of $30,000, and a special assessment of $50. We reverse the judgment of the district court and remand for dismissal of the indictment.

## BACKGROUND

On November 17, 1983, Benedetto Romano and his wife Giuseppa Romano were driving across the Peace Bridge from Buffalo, New York, to Ontario, Canada. Upon reaching the Canadian end of the bridge, they stopped at the customs station, and were referred to "the secondary yard" for inspection by Canadian customs official Bruce Mehlenbacher. Upon opening the trunk of the car and seeing two bags, Mehlenbacher examined one of the bags and noticed a large sum of cash. When asked how much money was in the bag, Romano responded "several thousand dollars". Upon learning from Romano that he had not complied with United States currency reporting requirements, *see* 31 U.S.C. § 5317, Mehlenbacher contacted American customs across the bridge and asked if they wanted Romano sent back. Receiving an affirmative response, Mehlenbacher refused the Romanos entry into Canada and ordered them back across the bridge.

At the United States side, the Romanos were stopped and questioned by immigration officer Samuel Tiranno, who had been alerted by the American customs supervisor. Tiranno asked the Romanos about their citizenship and then asked if they had anything in their car. Romano responded that there was money in the car. When asked "how much?", Romano at first told Tiranno that it was $30,000 or $35,000, and every time Tiranno asked, the amount would go up a little bit. When Tiranno indicated that he needed a definite amount, Romano finally told him there was over $300,000 in his car.

At that point, Romano was directed to the secondary customs station where customs official Joseph Rappa asked Romano to fill out Customs Form 605B (baggage declaration) and Customs Form 4790 (report of international transportation of currency in excess of $10,000). After Romano complied, the officials seized all the money in the trunk, pursuant to 31 U.S.C. § 5317. An exact count revealed a total of $359,500, mostly in $10 and $20 bills. While there is nothing precise in the record to establish it, the officials seized the money presumably because Romano had not filled out the monetary declaration *before* crossing the Peace Bridge toward Canada. The declaration he filled out, however, referred to both exporting and importing the money.

At this time, the Internal Revenue Service ("IRS") also served Romano with an IRS Form 3552, a termination assessment, for $169,973 as income tax due, based on the currency in his possession on that date. A termination assessment informs the person notified that his or her tax year is terminated as of a certain date and calculates the income tax due. The resulting tax liability becomes due immediately, and the IRS files a tax lien to secure payment of the tax debt. The IRS uses a termination assessment when it discovers that a person possesses an inappropriate amount of cash presumed to be taxable income from a previously undisclosed source and it fears that the collection of taxes may be thwarted if the person puts the cash or herself beyond the government's reach. The filing of a termination assessment does not relieve the taxpayer of her obligation to

prepare, sign, and file a true and correct income tax return for that year.

On the same day, the IRS also filed an IRS Form 668–A (notice of levy) with the District Director of Customs in Buffalo, thereby making demand on the Customs Service and attaching a portion of the seized money. The next day, the IRS filed a notice of the tax lien in the County Clerk's Office in Erie County. The IRS also sent to Romano, by certified mail, a copy of a Notice of Termination Assessment, dated November 22, 1983.

The government subsequently instituted a civil forfeiture proceeding in the Western District of New York, to forfeit to the government the entire $359,500 in cash seized from the trunk of Romano's car. Understandably, Romano opposed the forfeiture. After a bench trial, the district court denied the government's petition for forfeiture, finding that the government had not presented proof that the claimant actually knew about the currency reporting statute. *United States v. $359,500 in United States Currency*, 645 F.Supp. 638 (W.D.N.Y.1986).

On the appeal by the government, however, we held that actual knowledge need not be proven in a civil forfeiture proceeding, and we remanded for a determination of whether Romano could be charged with constructive knowledge of the reporting requirement. *United States v. $359,500 in United States Currency*, 828 F.2d 930 (2d Cir.1987). Upon remand, Romano invoked the fifth amendment during his deposition, and the court consequently stayed the civil forfeiture proceeding pending the outcome of this criminal case which had been instituted against Romano on April 8, 1988.

In a six-count indictment, Benedetto and Giuseppa Romano were jointly charged by a grand jury in the Eastern District of New York with three counts of income tax evasion for the years 1981, 1982, and 1983, in violation of 26 U.S.C. § 7201; one count of willful failure to file a return for the year 1983, in violation of 26 U.S.C. § 7203; and two counts of filing false returns for the years 1981 and 1982, in violation of 26 U.S.C. § 7206(1). On December 7, 1989,

with the government's consent, the court dismissed all of the counts against Giuseppa Romano; it also dismissed all of the counts against Benedetto Romano except Count Three, which charged him with income tax evasion for the calendar year 1983. On June 8, 1990, based on the stipulated facts, the district court found Romano guilty of income tax evasion.

## DISCUSSION

The indictment charges that, in violation of 26 U.S.C. § 7201, Romano and his wife [o]n or about October 15, 1984, * * * did knowingly and wilfully attempt to evade and defeat a large part of the income tax due and owing by them to the United States for the calendar year 1983, in an amount in excess of One Hundred Thousand Dollars ($100,000.00), by concealing and attempting to conceal from the Internal Revenue Service the nature and extent of their income and the location thereof.

In order to prevail on this charge of tax evasion, the government must prove the existence of three elements—(1) a substantial tax debt; (2) willfulness; and (3) an affirmative act by the defendant made on or about October 15, 1984, with the intent to evade or defeat a tax or payment of it. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Koskerides*, 877 F.2d 1129, 1137 (2d Cir.1989). We address each of these elements in turn.

### 1. *Substantial Tax Debt*

We agree with the district court that the first element of the crime of evasion was satisfied. The district court found a substantial tax debt based on Romano's possession of the $359,500. That sum was inconsistent with his prior income tax filings and was presumably earned income in 1983. Because Romano has conceded that the money is his, he owed to the government tax on that money as soon as the IRS served him with its termination assessment, and he continues to owe the money until the tax due is paid or is otherwise dispelled. Since the termination as-

sessment was served on November 17, 1983, Romano's tax debt arose on that day; and since he has yet to satisfy that debt, he also had a tax debt on October 15, 1984, the date on which Romano is charged in the indictment with evading taxes.

The district court properly rejected Romano's argument that no tax debt could exist because "the government" had already seized the entire $359,500 and had brought a civil forfeiture proceeding to retain it. It was the customs service, not the IRS, that held the money. Even though the IRS had filed with customs a notice of levy for the assessed tax due, that levy would be effective only if Romano is eventually successful in the forfeiture action. If he loses on the forfeiture and the government or some third party ends up as "owner" of the currency, the tax owed by Romano would not be satisfied out of that fund. Under these circumstances the district court correctly held that there was a substantial tax debt notwithstanding the forfeiture.

### 2. *Willfulness*

■ We next consider willfulness. Satisfaction of the willfulness requirement is closely connected with the affirmative act element. *See United States v. Stone*, 702 F.2d 1333, 1339 n. 4 (11th Cir.1983). Evidence of affirmative acts may be used to show willfulness, and the defendant must commit the affirmative acts willfully to be convicted of tax evasion. In this case, if the affirmative act element is satisfied, there is no question that willfulness is also present, and if the evidence of an affirmative act is insufficient, then willfulness becomes moot. Thus, the critical question is the third element—whether Romano engaged in affirmative acts with the specific intent to evade his tax obligation. We turn to that question.

### 3. *Affirmative Act in Attempt to Evade Taxes*

■ The district court erred when it held on this record that Romano had acted affirmatively in an attempt to evade or defeat the payment of his taxes. The district

court's finding on this element was based on three factors: (a) Romano's attempt to take the money to Canada on November 17, 1983, without reporting it; (b) his "evasive" answers on that day to customs officials when the money was discovered; and (c) his subsequent failure to file a tax return. These three things together, according to the district court, establish beyond a reasonable doubt that Romano had attempted to evade or defeat payment of his 1983 taxes. We disagree.

Preliminarily, we note that the indictment indicates that the evasion charged against Romano occurred on or about October 15, 1984. Nothing in this record shows that anything at all occurred on or about that date; on a technical level, therefore, the case might be viewed as one of insufficient evidence of the particular crime charged. Since Romano does not argue this otherwise obvious point, we assume that he was granted extensions of time until October 15, 1984, to file his 1983 return, so that the third factor cited by the district court, failure to file a return for 1983, occurred at that time.

We note, however, that October 15, 1984, is almost a full year after Romano attempted to transport the $359,500 out of the country, another of the factors that the district court relied on in finding an attempt to evade. On November 17, 1983, when Romano's money was seized by the government, and before the termination assessment was imposed, Romano had no obligation to disclose the existence of that money to the IRS. If, as the IRS and the district court presumed, he had earned the money during the 1983 calendar year, he still would not have been obligated to file a tax return including that income until April 15th of the following year. His taxable income for the full year of 1983 might, or might not, correspond to the full $359,500.

In addition, transportation of currency out of the country, in and of itself, is not a prohibited activity. Although Romano may have violated a currency reporting requirement, there is doubt as to whether he knew or should have known of the existence of such a requirement. *See United States v.*

*$359,500 in United States Currency*, 828 F.2d 930, 935–36 (2d Cir.1987). Without some intent to violate the law, we do not think it is correct to infer that merely carrying money to Canada can be used to fulfill the affirmative act requirement for the felony of tax evasion, especially if Romano had no obligation to disclose the amount of the money to the IRS at the time he was trying to transport the money.

■ We also cannot agree that the district court's characterization of Romano's answers to customs officials as "evasive" is a sufficient basis to infer an attempt to evade. At no point during the time Romano was being questioned did Romano resist the questioning. At the very beginning, he readily disclosed to the Canadian officials that he had with him "several thousand dollars". Although he initially said to the American officials that he was transporting $30,000 or $35,000, when asked for an exact figure at the primary inspection station, even before being led to the secondary station for more intensive investigation, he acknowledged that he was carrying "over $300,000". He also filled out all the appropriate forms when asked to do so, and he allowed customs officials to open the trunk of his car to count the cash. Thus, we do not think that his initial acknowledgment that he had $30,000 or $35,000, in the face of his overall voluntary attitude, can support the finding of an attempt to evade.

■ Moreover, Romano's subsequent failure to file a tax return cannot by itself support a finding that he affirmatively attempted to evade his taxes. A person cannot be convicted of tax evasion based merely on a willful omission; "the person must also undertake an affirmative act of evasion." *United States v. Masat*, 896 F.2d 88, 97 (5th Cir.1990) (citing *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943)). *See also United States v. Voorhies*, 658 F.2d 710, 715 (9th Cir. 1981) (mere failure to file a return and to pay tax is insufficient for conviction of tax evasion).

■ Thus, none of the three factors relied on by the district court, taken alone, establishes an attempt to evade taxes. The question then becomes whether the three factors in combination with each other and with the other uncontested facts of this case established this element beyond a reasonable doubt. When viewed in this overall perspective, the government's case becomes more unrealistic. Romano could not have been guilty of evading taxes on November 17, 1983, when he crossed the Peace Bridge, because his tax year was still open and he had yet to owe anything to the IRS. After the events of that day there was nothing that Romano did or failed to do, including his not filing a return for 1983, that in any way could have deceived the government. The government had already seized the money that gives rise to the tax debt underlying the tax evasion charge. It knew the exact amount. Currently it seeks forfeiture of the entire sum. Even before he left the Peace Bridge, the IRS had served Romano with a termination assessment and placed a lien with customs on the seized money, thus assuring payment of the tax in the event the attempted forfeiture should fail. We do not understand what further information as to his tax obligation the government might have obtained by Romano's filing of a return. Failure to file a tax return in circumstances such as these, where such an omission is obviously not intended to conceal from the government the amount of money in dispute, does not logically imply an attempt to evade taxes.

Further supporting this analysis is the fact that Romano need only have filed a return reporting this money as "Sullivan case income—$395,500", *see United States v. Sullivan*, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), thereby revealing to the IRS only what it already knew.

Why, then, did Romano not file a return for 1983? It is true that no evidence of this was presented, in the sense of direct testimony by Romano or his attorney. But it was also clear that at all times after the forfeiture Romano was represented by counsel, both in the forfeiture proceedings and in this criminal action. Moreover, prior to trial in this case, Romano raised the affirmative defense of having acted on the

**1574**

advice of counsel, thus causing the district court to grant the government's motion to have his attorney, Murray Appleman, disqualified from representing Romano at trial. Romano claims on this appeal that his attorney had advised him not to file a return for fear of giving up his fifth amendment right not to incriminate himself. Romano also claims that he relied in good faith upon the advice of his attorney. While the district court may have properly rejected these claims for lack of supporting testimony of Romano or his attorney, that does not end the issue. What is clear is that whatever Romano's specific reasons may have been for not filing the 1983 return, an attempt to evade taxes was not one of them, for there was nothing for Romano to gain, nothing to conceal from the IRS, except possibly some incriminating information as to the *source* of the income—information that is protected by the fifth amendment.

Romano was, of course, required to file a tax return, and his failure to do so might have been a basis for the lesser criminal charge of failure to file, *see* 26 U.S.C. § 7203, one of the charges that was dropped. However, given that Romano was required to provide only the bare minimum of information under *Sullivan*, to protect his fifth amendment rights, information which the government already had and which Romano knew the government had, we cannot accept the government's claim that Romano's failure to file under these circumstances has probative weight in establishing the more serious crime of tax evasion.

Since the element of an affirmative attempt to evade taxes was not established beyond a reasonable doubt, the government failed to establish the charged crime of tax evasion. We hold that Romano's conviction for willfully evading his income tax obligations for 1983 cannot be upheld in the unique and specific circumstances revealed by this record. Romano may have been guilty of other crimes, but his guilt of tax evasion has not been sufficiently established.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand for dismissal of the indictment.