**UNITED STATES of America, Appellee,**

v.

**Julius KLAUSNER, Defendant–Appellant.**

No. 862, Docket 95–1451.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1996.

Decided March 27, 1996.

James R. Devita, New York City (Brian D. Linder, Paul S. Hugel, Clayman & Rosenberg, New York City, of counsel), for Defendant–Appellant.

Karen Wehner, Attorney, Tax Division, Department of Justice, Washington, DC (Mary Jo White, United States Attorney for the Southern District of New York, Loretta C. Argrett, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Attorneys, Tax Division, Department of Justice, Washington, DC, of counsel), for Appellee.

Before: VAN GRAAFEILAND, MINER and CABRANES, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Julius Klausner appeals from a judgment entered in the United States District Court for the Southern District of New York (Brieant, J.), following a jury trial, convicting him of four counts of attempted tax evasion, in violation of 26 U.S.C. § 7201, four counts of willful failure to file tax returns, in violation of 26 U.S.C. § 7203, and 19 counts of assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). The district court sentenced Klausner to a 33-month term of imprisonment, a three-year term of supervised release, a fine of $123,734, and a special assessment of $1250. On appeal, Klausner contends that the district court erred in its jury charge on materiality as to the assisting counts and that the evidence of attempted tax evasion was insufficient. For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

Beginning in the early 1980s, Klausner, a certified public accountant ("CPA"), engaged in the business of preparing income tax returns for both individual and corporate clients. His total taxable income for the years 1986 through 1989 was almost $640,-000, giving rise to a total tax owed of over $190,000. However, Klausner failed to timely file an income tax return for any of those years. In April of 1987, he filed a timely request for extension of time to file his 1986 tax return; in that request form, he falsely stated that he did not owe any tax for 1986. Klausner only made estimated tax payments of $3000 for each of the tax years 1986, 1987, and 1988. He made no estimated tax payments for the 1989 tax year.

On October 30, 1990, Internal Revenue Service ("IRS") special agents came to Klausner's place of business to question him in connection with their investigation of his

failure to file income tax returns. IRS Special Agent Frederick Stranahan informed Klausner that he was the subject of a criminal investigation and read him his Miranda rights. During the questioning, Klausner stated that he had not filed his own tax returns for the tax years 1986 through 1989 due to his procrastination. In regard to the scope of his practice, Klausner told Stranahan that he prepared approximately 250 to 300 individual income tax returns per year for his clients. In fact, during the years 1986 through 1989, Klausner had prepared 422, 471, 616, and 758 individual income tax returns, respectively. Stranahan also questioned Klausner regarding his expected tax liability. Klausner stated that, based on the estimated tax payments he already had made and the withholding on his wife's salary, he did not expect to have any additional tax liability. However, Klausner owed taxes totalling more than $190,000 for the years 1986 through 1989.[1] Klausner also stated that he and his wife had total adjusted gross income of about $100,000 a year. In fact, their adjusted gross income was significantly higher in the 1987 to 1989 tax years.

After his interview with Stranahan, Klausner began to file his income tax returns for the tax years 1986 through 1989. On February 6, 1991, Klausner filed his tax return, along with a payment, for the 1986 tax year. During the next several weeks, he filed his income tax returns, along with payments, for the tax years 1987, 1988, and 1989.

In the spring of 1992, the IRS began to audit the income tax returns of Klausner's clients. The IRS found that these returns included itemized deductions for charitable contributions and business expenses that were either nonexistent or overstated. Clients who testified at trial indicated that Klausner had spent very little time discussing their returns with them and had not asked them for specific information in regard to the itemized deductions. Instead, Klausner had included the false itemized deductions in his clients' tax returns on his own initiative. As a result of the audits, the IRS disallowed many of the deductions, and

Klausner's clients were required to pay additional taxes.

On October 8, 1993, Klausner was indicted on four counts of attempted tax evasion and four counts of willful failure to file a tax return. On December 17, 1993, the government filed a superseding indictment that added 19 counts, charging Klausner with assisting in the preparation of the false tax returns of 19 of his clients.

Klausner's trial commenced in December of 1994. IRS agents and several of Klausner's clients testified during the four-day trial. In addition, both the government and Klausner called medical experts to testify regarding Klausner's mental condition at the time of the offenses. At the close of the trial, the district court instructed the jury on the 19 counts of assisting in the preparation of false tax returns as follows: "If you find that the itemized deductions claimed on any of the tax returns listed in Counts 9 through 27 are false, then you will find that such returns are false as to a material matter."

On December 16, 1994, the jury convicted Klausner on all 27 counts and he was sentenced by the district court on July 20, 1995. This appeal followed.

## DISCUSSION

On appeal, Klausner contends that his conviction on 19 counts of assisting in the preparation of false tax returns should be overturned. He argues that the district court erred in charging the jury that if it found that the itemized deductions on the tax returns were false, then the returns were false as to a material matter. Klausner also claims that there was insufficient evidence to support his conviction on four counts of attempted tax evasion. We reject these contentions.

### I. Jury Charge on Materiality Under § 7206(2)

Klausner was convicted under § 7206(2) of assisting in the preparation of false income tax returns for 19 of his clients, due to his inclusion of false itemized deduc-

---

1. The amount he owed for the years 1986 through 1989 was approximately $16,022, $23,- 347, $64,342, and $87,160 for each year, respectively.

tions in their returns. Section 7206 provides, in pertinent part:

> Any person who—
>
>  . . . .
>
> (2) . . . [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return . . . which is fraudulent or is false as to any material matter . . .
>
>  . . . .
>
> shall be guilty of a felony . . . .

In order to establish a violation of § 7206(2), the government is required to prove: "(1) that [the defendant] aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return, (2) that the return was fraudulent or false as to a material matter, and (3) that the act of the [defendant] was willful." *United States v. Perez,* 565 F.2d 1227, 1233–34 (2d Cir.1977).

In the present case, the district court instructed the jury on the issue of materiality as follows: "If you find that the itemized deductions claimed on any of the tax returns listed in Counts 9 through 27 are false, then you will find that such returns are false as to a material matter." According to this charge, the issue of materiality was a question of law that the court had decided. *See United States v. Greenberg,* 735 F.2d 29, 31 (2d Cir.1984) (holding that the determination of materiality under 26 U.S.C. § 7206(1) [2] is a question of law for the court).

Klausner concedes that, under the law of this Circuit at the time of his trial, it was correct for the court to decide the question of materiality. However, he argues that the district court's instruction was erroneous in light of the Supreme Court's subsequent decision in *United States v. Gaudin,* —— U.S.

——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). In *Gaudin,* the defendant was charged with making false statements on Department of Housing and Urban Development ("HUD") loan documents, in violation of 18 U.S.C. § 1001.[3] The trial court had instructed the jury that the government was required to prove that the alleged false statements were material to the activities and decisions of HUD, and that "[t]he issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court." *Gaudin,* —— U.S. at ——, 115 S.Ct. at 2313 (alteration in original and quotation omitted).

The parties in *Gaudin* agreed that materiality is a necessary element of a § 1001 violation. *Id.* The parties also agreed on the definition of "materiality" in this context— "the statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Id.* (alteration in original and quotation omitted).

The Supreme Court held that, because the Fifth and Sixth Amendments to the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," *Id.* at ——, 115 S.Ct. at 2313 (citing *Sullivan v. Louisiana,* 508 U.S. 275, 276–79, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993)), the trial court's refusal to allow the jury to determine the materiality of the alleged false statements infringed the defendant's Fifth and Sixth Amendment rights. The Court reasoned that the decision whether the statements were material

> requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?"; and

---

**2.** Section 7206 provides, in relevant part:
Any person who—
(1) . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .

 . . . .
shall be guilty of a felony . . . .

**3.** Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

(b) "what decision was the agency trying to make?". The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality (quoted above) to these historical facts.

*Id.* at ——, 115 S.Ct. at 2314. According to the Court, the trial court's failure to allow the jury to determine the question of materiality deprived the defendant of his "historical and constitutionally guaranteed right ... to demand that the jury decide guilt or innocence on every issue, which includes application of the law to the facts." *Id.* at ——, 115 S.Ct. at 2315. The Court, however, recognized that, "[i]n criminal cases, as in civil, ... the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions." *Id.* at ——, 115 S.Ct. at 2315 (citing *Sparf v. United States,* 156 U.S. 51, 105–06, 15 S.Ct. 273, 294–95, 39 L.Ed. 343 (1895)).

Klausner contends that, in light of the Supreme Court's holding in *Gaudin,* the district court erred in failing to submit the question of the materiality of the false itemized deductions to the jury. We disagree. The Supreme Court's analysis of the materiality of false statements made to HUD, in violation of § 1001, does not apply in the present case. While the Supreme Court's determination of materiality required the resolution by the jury of "subsidiary questions of purely historical fact," the determination of materiality in the present case involved purely a question of law and was suitable for resolution by the district court. *See United States v. Taylor,* 66 F.3d 254, 255 (9th Cir.1995) (stating that "the issue of materiality in most [criminal perjury and false statement] statutes is a question of law for

the judge" and that the "exception has been section 1001 cases, in which we have held that it is an element of the crime that must be determined by the jury" (alteration in original and quotation omitted)).

■ In order to establish a violation of § 7206(2), the government must prove that a tax return is false as to a material matter. In the present case, the itemized deductions on the income tax returns of Klausner's clients constituted material matters if they were essential to the accurate computation of the clients' taxes.[4] *See United States v. Warden,* 545 F.2d 32, 37 (7th Cir.1976) ("The test of materiality with respect to a false return case is whether a particular item must be reported in order that the taxpayer estimate and compute his tax correctly." (quotation omitted)); *United States v. Null,* 415 F.2d 1178, 1181 (4th Cir.1969) (same). Under the statutes governing the calculation of income tax, the itemized deductions on the income tax returns of Klausner's clients were essential to the computation of their taxes. According to 26 U.S.C. § 1, a tax is imposed on the taxable income of individuals. Under 26 U.S.C. § 63, an individual's taxable income is defined as the individual's gross income[5] minus allowable deductions, including itemized deductions. Itemized deductions include deductions for business expenses, under 26 U.S.C. § 162, and deductions for charitable contributions, under 26 U.S.C. § 170. The Seventh Circuit in *Warden* recognized the effect of this statutory scheme:

> Since deductions are subtracted from gross income or adjusted gross income to reduce the ultimate tax liability, they are material to the contents of the return. Stated oth-

---

**4.** This definition of materiality in connection with false itemized deductions on income tax returns is consistent with determinations of materiality that we previously have made in other contexts under § 7206. For instance, in *Greenberg,* we held that the defendant's fraudulent classification of corporate business expenses and loan payments in a corporate income tax return and his underreporting of his own income in his personal income tax return were material misstatements, because they "had the potential for hindering the IRS's efforts to monitor and verify the tax liability of [the corporation] and the [defendant and his wife]." 735 F.2d at 32; *see also United States v. Mittelstaedt,* 31 F.3d 1208, 1221

(2d Cir.1994) (holding that defendant's failure to disclose another partner's interest in a partnership tax return was material because it had the potential for hindering the IRS's efforts to verify and monitor the other partner's tax liability), *cert. denied,* —— U.S. ——, 115 S.Ct. 738, 130 L.Ed.2d 640 (1995). In the present case, any inaccuracies in the income tax returns of Klausner's clients also would disrupt the IRS's efforts to ascertain their tax liabilities.

**5.** Gross income is defined as "all income from whatever source derived." 26 U.S.C. § 61.

erwise, *the deduction will invariably affect the taxpayer's liability.* Thus, when [the district judge] instructed the jury that the deductions were material matters as that term is used in the indictment, he did no more than state the obvious fact that deductions affect the computation of tax liability.

545 F.2d at 37 (emphasis added).

In the present case, because the itemized deductions directly affected the calculation of taxable income in the tax returns of Klausner's clients, any false deductions necessarily resulted in inaccurate computations of their taxable income. Whether the false itemized deductions had substantial or minor effects on the amount of taxable income reported, the deductions nonetheless caused the tax returns to be inaccurate and thus were material matters. *See United States v. Helmsley*, 941 F.2d 71, 92 (2d Cir.1991) ("False statements about income do not have to involve substantial amounts in order to violate [§ 7206(1) ].")*, cert. denied*, 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992); *United States v. Citron*, 783 F.2d 307, 313 (2d Cir.1986) (rejecting appellant's argument that "a 'material' falsity, as required by § 7206(1), should be construed as one which results in a 'substantial' tax due"); *United States v. Hedman*, 630 F.2d 1184, 1196 (7th Cir.1980) (holding that "[s]ection 7206(1) does not require that a false statement on an income tax return be substantial" and that "false statements relating to gross income, irrespective of the amount, constitute a material misstatement in violation of [s]ection 7206(1)")*, cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). Accordingly, in the present case, the false itemized deductions on the income tax returns of Klausner's clients invariably caused errors in the computation of their taxes and thus caused the returns to be materially false as a matter of law under § 7206(2).

In *Gaudin*, it first was necessary to make factual determinations as to "what statement was made" and "what decision ... the agency [was] trying to make" in order to decide whether the statements had "a natural tendency to influence, or [be] capable of influencing, the decision of [HUD]." —— U.S. at —— – ——, 115 S.Ct. at 2313–14 (second alteration in original and quotation omitted); *see also Taylor*, 66 F.3d at 255 (stating that "when the element of materiality requires a factual finding, as it does in section 1001 prosecutions, that element must be submitted to the jury" (quotation omitted)). In contrast, no such factual questions needed to be resolved by the jury in the present case. Because the false itemized deductions necessarily resulted in inaccurate amounts of taxes reported on the clients' income tax returns, the deductions inevitably made the returns false as to a material matter. The *Gaudin* Court itself recognized that, "[i]n criminal cases, ... the judge must be permitted to instruct the jury on the law." —— U.S. at ——, 115 S.Ct. at 2315. Because the determination of materiality in the present case under § 7206(2) was purely a legal question, the district court did not err in its charge to the jury.

## II. *Sufficiency of the Evidence of Attempted Tax Evasion*

■ Section 7201 provides, in relevant part:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....

In order for a person to be convicted of attempted income tax evasion, the government must prove three elements: "(1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting the evasion or attempted evasion of the tax." *United States v. DiPetto*, 936 F.2d 96, 97 (2d Cir.) (quotation omitted)*, cert. denied*, 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). Klausner contends that the government did not offer sufficient evidence to establish either that he committed affirmative acts of attempted income tax evasion or that his conduct was willful. We disagree.

■ A defendant challenging the sufficiency of the evidence bears "a very heavy burden." *United States v. Scarpa*, 913 F.2d 993, 1003 (2d Cir.1990) (quotations omitted). We must uphold a conviction if, "after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Roldan–Zapata,* 916 F.2d 795, 802 (2d Cir.1990) (quotations omitted), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991). "The jury is entitled to base its verdict upon inferences from circumstantial evidence, and such evidence need not have excluded every possible hypothesis of innocence." *Id.* (quotations and citation omitted).

▆▆ Klausner first argues that the government offered insufficient evidence that he committed affirmative acts constituting attempted income tax invasion. An affirmative act includes "any conduct, the likely effect of which would be to mislead or to conceal." *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 366, 87 L.Ed. 418 (1943). Such conduct includes "false statements made to Treasury representatives for the purpose of concealing unreported income." *United States v. Beacon Brass Co.,* 344 U.S. 43, 45–46, 73 S.Ct. 77, 78–79, 97 L.Ed. 61 (1952); *see also United States v. Winfield,* 960 F.2d 970, 973 (11th Cir.1992) ("[A]n affirmative act constituting an evasion or attempted evasion of the tax occurs when false statements are made to the IRS after the tax was due...."); *United States v. Copeland,* 786 F.2d 768, 770 (7th Cir.1985) ("Where a taxpayer has willfully failed to file a tax return in violation of § 7203, a prior, concomitant or subsequent false statement may elevate the § 7203 misdemeanor to the level of a § 7201 felony."); *United States v. Goodyear,* 649 F.2d 226, 228 (4th Cir.1981) (same).

The government presented evidence that Klausner had lied on his request for extension of time to file his 1986 tax return by stating that he did not owe any tax for 1986, when in fact he owed $16,022. The government also presented evidence that Klausner had made various false statements to IRS Special Agent Stranahan at his interview in October of 1990. Klausner claimed that he had prepared about 250 to 300 individual income tax returns per year, while, in fact, he had prepared, in the years 1986 through

1989, 422, 471, 616, and 758 returns, respectively. In addition, Klausner had stated that he did not expect to have any additional tax liability, although, at the time of his statement, his taxes owed for the years 1986 through 1989 totalled over $190,000. Finally, Klausner claimed that he and his wife had combined adjusted gross income of approximately $100,000 a year, while, in fact, such income was significantly higher in the 1987 to 1989 tax years.[6] Based on the evidence presented, the jury reasonably could have found that Klausner misstated his income tax liability on the 1986 extension request and made false statements to the IRS with the intent to evade taxes.

Klausner, nonetheless, contends that this case is similar to *United States v. Romano,* 938 F.2d 1569 (2d Cir.1991), in which we held that the defendant's false statements to customs officials were insufficient affirmative acts to support his conviction for attempted tax evasion. *Id.* at 1573. In *Romano,* although the defendant initially claimed that he was transporting $30,000 or $35,000, he later acknowledged during the questioning that he was carrying over $300,000. *Id.* In the present case, however, Klausner did not correct his misstatements during his interview with Stranahan. Although Klausner eventually cooperated with the government in early 1991 by filing his delinquent tax returns, his extension of time request coupled with his false statements to Stranahan in October of 1990 supported an inference that he was attempting to evade taxes by concealing his income at that time. Thus, the government provided sufficient evidence of Klausner's affirmative acts of attempted income tax evasion to support his conviction under § 7201.

▆▆ Klausner also argues that the government offered insufficient proof that his conduct was willful. In order to establish willfulness, the government is required "to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 610,

---

6. Their combined adjusted gross income for the years 1986 through 1989, as reported on their joint tax returns, was $93,954, $127,882, $249,258, and $331,040 for each year, respectively.

112 L.Ed.2d 617 (1991). Willfulness may be inferred from circumstantial evidence. *United States v. Collorafi,* 876 F.2d 303, 305 (2d Cir.1989). The Supreme Court also has indicated that, if a "tax evasion motive plays any part" in certain conduct, an "affirmative willful attempt" to evade taxes may be inferred from that conduct. *Spies,* 317 U.S. at 499, 63 S.Ct. at 368. The Court has not set limitations to the type of conduct from which willfulness can be inferred. *Id.*

▆▆▆ In the present case, the government presented ample evidence to allow the jury to infer that Klausner's conduct was willful. First, Klausner's background as a CPA and his extensive business experience—including, of course, as a professional tax preparer—demonstrated that he was aware of his duty to report his income taxes. *See United States v. MacKenzie,* 777 F.2d 811, 818 (2d Cir.1985) (indicating that the fact that one defendant had a college degree and the other defendant a degree in business administration increased the likelihood that defendants were aware of their tax duties), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986). Second, the jury could infer from the evidence presented that Klausner voluntarily and intentionally violated his duty to report his income taxes. Making false statements to government agents in connection with a tax investigation is considered evidence of willfulness. *See, e.g., United States v. Chesson,* 933 F.2d 298, 304 (5th Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991); *United States v. Calles,* 482 F.2d 1155, 1160 (5th Cir.1973). Patterns of understating or failing to report income are also considered evidence of willfulness. *See, e.g., United States v. Koskerides,* 877 F.2d 1129, 1138 (2d Cir.1989); *United States v. Skalicky,* 615 F.2d 1117, 1120 (5th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). In addition to presenting evidence that Klausner made false statements to the IRS, the government in the instant case presented evidence that Klausner repeatedly under-estimated his tax liability by making estimated tax payments of only $3000 for each of the tax years 1986, 1987, and 1988, and repeatedly failed to file his income tax returns. The jury was entitled to infer willfulness from this combination of evidence.

Klausner, nonetheless, argues that his eventual filing of income tax returns in early 1991 demonstrates that he did not willfully attempt to evade paying his income tax. However, Klausner's eventual cooperation with the government does not negate willfulness in his earlier attempts to evade his income tax liability. Klausner also contends that his behavior could not have been willful because of his "severe psychiatric disorder which affected [his] ability to deal with his personal affairs in an appropriate manner." However, both Klausner and the government presented expert testimony regarding his mental condition, and the jury was entitled to accept the government's testimony and find that Klausner had acted willfully. Thus, the government presented sufficient evidence to support the jury's finding that Klausner's attempted tax evasion was willful.

### CONCLUSION

In view of the foregoing, we affirm the judgment of the district court.

VAN GRAAFEILAND, Circuit Judge, concurring in part and dissenting in part:

I concur in my colleagues' affirmance of Klausner's conviction under 26 U.S.C. § 7201. However, I am constrained by the Supreme Court's holding in *United States v. Gaudin,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), to dissent from the affirmance of Klausner's conviction under 26 U.S.C. § 7206(2).

Because of the breadth of the issues with which the Supreme Court customarily is confronted, not every pronouncement of that Court is a model of simplicity and clarity. However, the following holding in *Gaudin* unquestionably is:

> The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged. The trial judge's refusal to allow the jury to pass on the "materiality" of Gaudin's false statements infringed that right.

*Id.* at ——, 115 S.Ct. at 2320.

Although, as Chief Justice Rehnquist recognized in his concurring opinion, —— U.S. at

——, 115 S.Ct. at 2322, the Court was overturning the established law of this and most other circuits, the change may not be as drastic as it at first appears to be. Henceforth, in submitting the issue of materiality to the jury, our trial courts will have to define the term, a task not easily accomplished. The probabilities are that in many cases the carrying out of this difficult assignment will so closely resemble the judicial determination of materiality that the Supreme Court now has outlawed as to accomplish substantially the same result.