**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1122
_____

UNITED STATES OF AMERICA

v.

RODNEY E. MILLER, SR.,
Appellant

_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. No. 3-13-cr-00007-001)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 12, 2014
_____

Before: CHAGARES, JORDAN, and SHWARTZ, Circuit Judges
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge

Rodney Miller appeals his judgment of conviction and sentence for willfully

causing the filing of a false tax return in violation of 26 U.S.C. § 7206(2). For the

reasons that follow, we will affirm.

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

I

Miller served as Chief Executive Officer of Roy Lester Schneider Hospital ("the Hospital") from 2002 to 2007. In 2006, he was paid a base salary of $265,000. A portion of that salary, $150,000, was paid by the Government of the Virgin Islands, and the remainder, $115,000, was paid by the Hospital. The Hospital also paid Miller a $40,000 housing allowance and $205,750 in two installments for other benefits, including incentive and retention bonuses, cost of living increases, and education and spousal allowances.

The jury heard evidence that Miller used different bank accounts to receive these funds. Miller directed that the portion of his salary paid by the Hospital and his housing allowance be deposited into his Navy Federal Credit Union account.[1] The portion of Miller's salary paid by the Government of the Virgin Islands was deposited into his Banco Popular account. Miller directed the Hospital to transfer the other $205,750 in benefits to his Pentagon Federal Credit Union account.

Thomas Dardaris, owner of Liberty Tax Service in Beaufort, South Carolina, prepared Miller's 2006 federal income tax return. Miller, a walk-in customer, produced a W-2 form for his income from the Government of the Virgin Islands and a 1099 form for accrued interest. Miller told Dardaris that he had another $115,000 in income but did not have a W-2 or 1099 form for it. Although the $115,000 figure corresponds with the

---

[1] Miller directed the Hospital to create a bank account for the Hospital with the Bank of Nova Scotia that was used to transfer his Hospital salary and housing allowance into his Navy Federal Credit Union account.

2

portion of Miller's salary paid by the Hospital, Dardaris testified that Miller told him that this income reflected "housing allowances, education, [and] reimbursements." App. 160. They agreed to describe this amount as "fees" under a section of the tax return for "[o]ther income." App. 160. Miller did not disclose to Dardaris the remaining $205,750 he received or his $40,000 housing allowance. Miller then filed his tax return.

On December 28, 2007, an attorney for the Hospital contacted Miller about the $205,750 "lump-sum" payments he had received. App. 168. Miller indicated that his W-2 and 1099 forms "were in storage" and that he would look for them. App. 172. Miller then faxed the attorney a handwritten explanation of the lump sum that detailed the payments it included, but he never provided his W-2 or 1099 forms.

Miller testified that he told Dardaris that his salary was comprised $150,000 from the Government of the Virgin Islands and $115,000 from the Hospital. He claimed that he "was not aware that [the other] sums were taxable" as he "didn't have a 1099 at the time." App. 274. He explained that he had "never received a 1099, [or] a W-2 for any other income from the hospital[,] ever." App. 275. He testified that he did not know into which account the extra $115,000 portion of his salary was deposited but that it was part of his base salary.

The jury convicted Miller of willfully aiding, assisting, procuring, counseling, or advising in the preparation and presentation of a false tax return in violation of 26 U.S.C. § 7206(2). The District Court sentenced Miller to twenty-one months' imprisonment and a term of supervised release. Miller appeals.

3

## II[2]

## A

Miller contends that there is insufficient evidence to support his conviction.[3] To prove a violation under 26 U.S.C. § 7206(2), the Government must show that the defendant:

> willfully aid[ed] or assist[ed] in, or procure[d], counsel[ed], or advise[d] the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.

26 U.S.C. § 7206(2). The elements of the offense are "(1) that [the] defendant aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) that the act of the defendant was willful." United States v. Gambone, 314 F.3d 163, 174 (3d Cir. 2003). Willfulness in the criminal tax context requires a showing that "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201 (1991).

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[3] We exercise plenary review of the grant or denial of a judgment of acquittal, reviewing the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 424, 430 (3d Cir. 2013) (en banc) (internal citations, quotation marks, and alterations omitted).

Here, there is sufficient evidence from which a jury could find a violation of Section 7206(2).[4] There is no dispute Miller caused the filing of a return that omitted a significant portion of his compensation. Miller's employment agreement outlined his compensation to include a base salary, a signing bonus, and incentive payments, as well as housing, spousal, and education allowances, and it contemplated that these payments may be subject to withholding taxes, indicating that they were taxable. Dardaris testified that he and Miller discussed "housing allowances, education, [and] reimbursements" with respect to the $115,000 Miller received above his $150,000 salary from the Government of the Virgin Islands. App. 160. They decided to report it as "fees" under the section for "[o]ther income." App. 160. Miller did not provide Dardaris any other information concerning the income he received. As a result, Miller reported only $265,198 when his income was, in fact, $510,947. In addition, the jury had evidence that $205,750 of Miller's unreported income was placed in a separate account into which no salary was deposited, suggesting Miller was attempting to segregate it from the income he reported. Thus, a jury could reasonably infer that Miller was aware of his obligation to report both his salary and the other benefits he received, but failed to disclose all of his income to

---

[4] Miller's subsequent filing of an amended tax return in 2009 does not alter our conclusion that there was sufficient evidence of willfulness. United States v. Klausner, 80 F.3d 55, 63 (2d Cir. 1996) ("[E]ventual cooperation with the government does not negate willfulness . . . .").

5

Dardaris and thereby underreported his income willfully.[5]   Hence, sufficient evidence supports Miller's conviction under Section 7206(2).

B

The District Court correctly sentenced Miller at a base offense level of sixteen.[6] Under U.S.S.G. § 2T1.4, the base offense level for offenses involving aiding or assisting tax fraud is determined by the amount of the tax loss.  U.S.S.G. § 2T1.4.  "Tax loss" is "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)."  U.S.S.G. § 2T1.1(c)(1).  Put differently, "the 'tax loss' is the amount of loss the defendant intends to bring about, not the amount of loss to the government that actually results."  United States v. Clarke, 562 F.3d 1158, 1164 (11th Cir. 2009).  It "is not reduced by any payment of the tax subsequent to the commission of the offense."  U.S.S.G. § 2T1.1(c)(5).  Therefore, the tax loss resulting from Miller's offense is the amount he intended to cause when he filed a false tax return; his subsequent attempt to amend the tax return does not alter the calculation.  Thus, the District Court did not err in finding a tax loss of $86,798 and

_____

[5] The Hospital produced a 1099 reflecting Miller's receipt of $415,604.08 of other income, but it is unclear if it was prepared as of the date Miller met with Dardaris.  Miller denied receiving it and thus did not provide this 1099 to Dardaris.  A jury could nonetheless infer from his statement to the Hospital's attorney that his W-2 and 1099 forms were in storage that Miller had a 1099 form for the extra benefits and therefore knew he had such forms reflecting income he was obligated to report.  A jury could thus infer that Miller's failure to provide a 1099 form to Dardaris was an attempt to evade his tax obligation.

[6] We exercise plenary review of an interpretation of the Sentencing Guidelines and review factual findings for clear error.  United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

sentencing Miller at a base offense level of sixteen.  See U.S.S.G. §§ 2T1.4, 2T4.1

(setting a base offense level of sixteen for offenses involving a tax loss of "[m]ore than

$80,000" but less than $200,000).[7]

III

For the foregoing reasons, we will affirm.

---

[7] Miller also argues that he did not, in fact, intend to cause a tax loss of $86,798, but the jury's verdict amply supports the conclusion that he did.