**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Maria Lilia ARAUJO, aka Lily Araujo,**
**Defendant—Appellant.**

No. 00–10473.
D.C. No. CR–98–05302–OWW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 15, 2001.

Decided July 24, 2002.

Before RONEY,* HUG and THOMAS, Circuit Judges.

## MEMORANDUM **

Maria Lilia Araujo ("Araujo") appeals her jury conviction and sentence on five counts of federal tax evasion under 26 U.S.C. § 7201. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over Araujo's timely appeal under 28 U.S.C. § 1291. We affirm. Because the parties are familiar with the factual and procedural history of this case, we do not recount it here.

The essential elements of federal tax evasion under 26 U.S.C. § 7201 are: "(1) the existence of a tax deficiency; (2) willfulness; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Marashi,* 913 F.2d 724, 735 (9th Cir.1990) (internal quotation marks and citation omitted). On appeal, Araujo presents two arguments, challenging the sufficiency of the government's evidence of her willfulness and the existence of a tax deficiency.[1] Sufficient evidence exists to support a conviction if, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.), *cert. denied,* 531 U.S. 969, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000). We find that the government's evidence was sufficient to sustain her conviction on the five counts.

Citing *Edwards v. United States,* 375 F.2d 862 (9th Cir.1967), Araujo first argues that the government's evidence was inadequate to show that she intended permanently to evade, rather than merely to postpone, payment of the federal taxes of her clients, Jess and Oralia Ortega ("the Ortegas"). In *Edwards,* we held that the willfulness requirement of 26 U.S.C.

---

* Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Because Araujo does not raise the separate legal question discussed by the dissent, namely whether a tax preparer's theft of client monies intended for the Internal Revenue Service properly constitutes tax evasion under 26 U.S.C. § 7201, we do not address the issue. *See Paracor Finance, Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1168 (9th Cir.1996) ("It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned.") (*quoting Collins v. City of San Diego,* 841 F.2d 337, 339 (9th Cir.1988)).

§ 7201 calls for "a specific intent to evade or defeat the tax or its payment," which "contemplate[s] an escape from tax and not merely a postponement of disclosure or payment." *Edwards,* 375 F.2d at 867. We concluded that the *Edwards* defendant, a tax attorney, did not intend the permanent evasion of his clients' taxes, but only "to take advantage of the time lag in Government investigation of delinquent returns to tide him over during a period of personal financial hardship." *Id.* Accordingly, we reversed the defendant's conviction under 26 U.S.C. § 7201 for insufficient proof of willfulness. *See id.*

Araujo's argument fails because the government's evidence was enough for a rational trier of fact to find that Araujo intended permanently to evade, rather than merely to postpone, payment of the Ortegas' federal taxes. The government's evidence shows that Araujo took for herself payments from the Ortegas that they intended for the tax authorities. The record is devoid of any evidence indicating that Araujo planned ultimately to send the Ortegas' payments to the Internal Revenue Service ("IRS"). In contrast with *Edwards,* there is no evidence that Araujo obtained extensions for the Ortegas' federal tax payments and thereby disclosed to the government that a return for the Ortegas was due. *See id.*

Moreover, Araujo's own evidence does not support her contention that she intended only to delay payment of the Ortegas' federal taxes. At trial, Araujo stated that the Ortegas gave her the checks at issue in the five appealed counts as loans, not as payments of their federal taxes. Araujo declared that whenever she repaid the loans, the Ortegas, rather than she, would be responsible for making their tax payments. Thus, Araujo's own trial testimony fails to substantiate her theory on appeal that she sought merely to postpone payment of the Ortegas' taxes.

Finally, evidence of Araujo's dire financial situation suggests that she could not reasonably have believed that she would see herself through her difficult times by filing tardy tax returns for the Ortegas. In *Edwards,* we cautioned: "One pursuing a path such as that of [the defendant] might eventually fall so far behind that no reasonable man could believe that he would ever catch up." *Id.* We found, however, that the *Edwards* defendant's "straits had [not] become that serious." *Id.* The record in this case indicates that the same was not true for Araujo. Araujo filed for bankruptcy after paying the Ortegas a mere fraction of the total loss that they incurred as a result of Araujo's tax evasion scheme. Given this evidence of Araujo's difficult financial predicament, it is reasonable to infer that Araujo intended permanently to evade, rather than merely to postpone, payment of the Ortegas' federal taxes. Thus, we reject Araujo's argument that the government's evidence was insufficient under *Edwards.*

Araujo next argues that the government's evidence on the five counts that she challenges was insufficient to show the existence of a tax deficiency. To prove a violation of 26 U.S.C. § 7201, the government must show the existence of a tax deficiency on the date that the taxpayer should have filed a return. *United States v. Voorhies,* 658 F.2d 710, 714 (9th Cir. 1981). However, the willful and affirmative conduct constituting the tax evasion may occur prior to the failure to file a return when taxes are due. *See United States v. Mal,* 942 F.2d 682, 685 (9th Cir. 1991) (the defendant's filing of a false and fraudulent tax withholding certificate constituted a sufficient willful and affirmative act for purposes of 26 U.S.C. § 7201).

The government's indictment set forth the five counts at issue in a table that contains columns indicating the count, the taxpayer (the Ortegas), the year for which the tax was due, the amount of tax due, the Ortegas' check date, and the date on which Araujo either cashed the Ortegas' check or deposited it into her personal bank account. Pointing to the last column, which indicates when she cashed or deposited the Ortegas' checks, and omitting any reference to the column that shows the tax years, Araujo argues that the government charged her with committing tax evasion at a time when the taxes were not yet due, and so no tax deficiencies then existed. Araujo contends that, accordingly, the government's evidence, showing that the Ortegas still owed federal taxes for the years of 1995 and 1996 after the April 15, 1996 and April 15, 1997 dates when the Ortegas should have filed their returns, was insufficient to prove the crimes charged because, Araujo asserts, the indictment charged crimes occurring at an earlier date.

■ We reject Araujo's argument because it misconstrues the indictment. The final column that Araujo cites does not allege the dates on which the tax deficiencies arose. Rather, this column shows the dates on which she performed the willful and affirmative acts constituting tax evasion by cashing or depositing into her personal bank account monies that the Ortegas intended for the IRS. As already noted, the required willful and affirmative conduct may occur prior to the existence of the tax deficiency. *See id.* The indictment indicates the April 15 date on which each tax deficiency arose by reference to the year for which the taxes were due and owing. The indictment charged her with evading the tax "due and owing by the individuals named below to the United States of America, for the tax years listed below ...." Because the case law defines the date of the tax deficiency as the date on which the tax became due and owing for the particular tax year, *see Voorhies*, 658 F.2d at 714, the indictment's specification of the 1995 and 1996 tax years alleged tax deficiencies on April 15, 1996 and April 15, 1997, respectively. Consequently, the government's evidence of tax deficiencies after April 15, 1996 and April 15, 1997 was adequate to prove the tax deficiencies that the government charged in its indictment.

■ Further, it is acceptable that Araujo was convicted of multiple counts of evasion for each of the tax years in question. *See Cohen v. United States*, 297 F.2d 760, 769–71 (9th Cir.1962) (affirming a conviction for tax evasion for tax years 1945 through 1950 when the defendant had previously been convicted of tax evasion for three of those years based on different acts); *Norwitt v. United States*, 195 F.2d 127, 133 (9th Cir.1952) (disagreeing with the defendant's argument that "several such separate [tax evasion] offenses may not be committed for the same year"). In this case, each of the three counts relating to the 1995 tax year and the two counts relating to the 1996 tax year is based on a different affirmative act of evasion. These distinctions differentiate the counts.

Because we reject Araujo's challenges to the sufficiency of the government's evidence on the five counts of tax evasion, we find no error in the district court's sentencing determination.

AFFIRMED.

RONEY, Senior Circuit Judge, Dissenting.

I respectfully dissent. The portion of the indictment containing counts 13–17 challenged on this appeal is set forth in full as follows:

The Grand Jury further charges T H A T MARIA LILIA ARAUJO, aka Lily Araujo, defendant herein, on or about the dates listed below, in the County of Tulare, State and Eastern District of California, did wilfully attempt to evade and defeat a large part of the tax due and owing by the individuals named below to the United States of America, for the tax years listed below, by diverting the payments of said federal taxes, in the appropriate amounts listed below, to the United States of America by depositing the taxpayers' personal checks intended to be applied for the payment of federal taxes into her business bank account or converting them to cash:

| COUNT | TAXPAYER | TAX YEAR | TAX DUE | CHECK DATE | DATE NEGOTIATED |
|-------|----------|----------|---------|------------|-----------------|
| TWELVE | Jess Ortega | 1994 | $17,665.00 | 7/15/95 | 7/17/95 |
| THIRTEEN | Jess Ortega | 1995 | $ 3,000.00 | 8/18/95 | 8/21/95 |
| FOURTEEN | Jess Ortega | 1995 | $ 3,000.00 | 10/5/95 | 10/6/95 |
| FIFTEEN | Jess Ortega | 1995 | $ 3,000.00 | 1/8/96 | 1/8/96 |
| SIXTEEN | Jess Ortega | 1996 | $ 3,000.00 | 4/2/96 | 4/4/96 |
| SEVENTEEN | Jess Ortega | 1996 | $ 3,000.00 | 7/4/96 | 7/5/96 |
| EIGHTEEN | Salvador Mendoza | 1994 | $ 883.00 | 3/25/95 | 4/3/95 |

All in violation of Title 26, United States Code, Section 7201. A TRUE BILL. Counts 13 through 17 involved estimated tax payments in the amount of $3,000 each, not final payment of taxes due. The evidence showed that for each of these counts, Jesse Ortega gave defendant Araujo one lump sum check, made out to either Araujo or her company, Servimex, to cover an estimated tax of $3,000, EDD contributions, and her own services. She deposited some of those checks into her bank account and cashed the others. This is what Araujo was supposed to do with those checks because they were made payable to her, and thus she did not "divert" the checks to her account. The checks themselves were not "intended to be applied for the payment of federal tax" as alleged in the indictment because they were not made payable to the United States of America, but rather to Araujo. Nor were they made payable to Araujo in the amount of a tax payment with the intent that Araujo would endorse them over to the United States of America.

Araujo had promised Ortega, however, that she would then write her own check to the government on his behalf to pay his estimated taxes. She broke that promise. She kept his money. She thus may well have been guilty of breach of fiduciary duty and theft vis-a-vis Ortega, but committed no act vis-a-vis the IRS that could be considered § 7201 tax evasion. The government did not charge Araujo with non-payment of estimated taxes under 26 U.S.C. § 7203.

Therefore, there was insufficient evidence to support Araujo's conviction for tax evasion under 26 U.S.C. § 7201 for the challenged counts because:

(1) No case has held that the intentional non-payment of estimated tax is a crime under 26 U.S.C. § 7201, the statute under which Araujo was charged. 26 U.S.C. § 7203 is the section that specifically covers willful failure to pay estimated tax or tax.

(2) Non-payment of tax is not a felony under 26 U.S.C. § 7201

(3) 26 U.S.C. § 7201 does not cover stealing from a taxpayer but covers tax evasion from the government only.

While the district court correctly stated that a § 7201 conviction requires affirmative conduct constituting an evasion or at-

tempted evasion of tax in accordance with *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), it improperly interpreted Araujo's misappropriation of her clients' money as "tax evasion" for the purposes of § 7201 failing to recognize that "tax evasion" is not just stealing money from a taxpayer as Araujo did here. Rather, "tax evasion" is lying to or concealing the truth from the IRS, or, "[t]he willful attempt to defeat or circumvent the tax law in order to illegally reduce one's tax liability." BLACK'S LAW DICTIONARY 1474 (7th ed.1999).

Courts have uniformly held that affirmative acts associated with tax evasion involve its traditional notions, such as filing a false return, concealing the taxpayer's ability to pay taxes, or removing assets from the IRS' reach or knowledge (e.g. moving money offshore to conceal its existence). *See, e.g., Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943) (listing examples of what constitutes a willful attempt to evade tax); *United States v. McGill*, 964 F.2d 222, 233 (3d Cir.1992) (hiding money from IRS by depositing money in spouse's account and office expense account are affirmative acts of tax evasion); *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir.1992) (filing unsigned tax returns constitutes an affirmative act); *United States v. Daniel*, 956 F.2d 540, 542–543 (6th Cir.1992) (failing to file tax returns while dealing almost exclusively in cash were affirmative acts of tax evasion); *United States v. DiPetto*, 936 F.2d 96, 97 (2d Cir.1991) (falsifying W–4 forms to conceal accurate amount of their taxable income are affirmative acts); *United States v. Connor*, 898 F.2d 942, 945 (3d Cir.1990) (filing false W–4 information is an affirmative act of § 7201 evasion); *United States v. Conley*, 826 F.2d 551, 556–57 (7th Cir.1987)(placing assets in son's name and manipulating accounts to shield them from IRS are affirmative

acts); *United States v. Shorter*, 809 F.2d 54, 57 (D.C.Cir.1987) (affirming conviction where defendant carried on "cash lifestyle"), *abrogated on other grounds, Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *United States v. Hook*, 781 F.2d 1166, 1169 (6th Cir.1986) (concealing assets from the IRS, even though return was timely and accurately filed, was § 7201 tax evasion).

Thus, the courts have defined "evade" and "evasion" in the tax context as concealing from or misrepresenting information to the IRS, not a willful failure to pay tax or stealing a taxpayer's money. The Third Circuit, citing this Court, stated that "[a]n affirmative act is anything done to mislead the government or conceal funds to avoid payment of an admitted and accurate deficiency." *McGill*, 964 F.2d at 230 (citing *Cohen v. United States*, 297 F.2d 760, 762, 770 (9th Cir.1962)). The *McGill* court stated that "[g]enerally, affirmative acts associated with § 7201 evasion of payment involve some type of *concealment of the taxpayer's ability to pay his or her taxes or the removal of assets from the reach of the Internal Revenue Service.*" *Id.* (emphasis added). The *McGill* court went on to list examples of evasion of payment (as opposed to evasion of assessment) such as "placing assets in the name of others; dealing in currency; causing receipts to be paid through and in the name of others; and causing debts to be paid through and in the name of others." *Id.* The *McGill* court then went on to state that "[m]erely failing to pay assessed taxes, without more, however, does not constitute evasion of payment, though it may satisfy the requirements for the willful failure to pay taxes under § 7203 .... [o]nly affirmatively evasive acts—acts intending to conceal—are punishable under § 7201" *Id.* at 231 (citing *United States v. Sansone*, 380 U.S. at 351, 85 S.Ct. 1004; *United*

*States v. Romano,* 938 F.2d 1569, 1573 (2d Cir.1991)).

Finally, the *McGill* court noted that "[t]he government advises its attorneys that '[o]bstinately refusing to pay taxes due, possession of the funds needed to pay the taxes, or even the open assignment of the income, without more, merely constitute a willful failure to pay taxes .... They do not meet the requirement of the affirmative act necessary for an evasion charge.'" *Id.* (citing U.S. Dept. of Justice, *Criminal Tax Manual,* § 8.04 at 8–7, 8–8 (6th ed.1985); Joint App. at A–229–30).

Where tax preparers are charged under § 7201, the case law again shows that evasion consists of fraud, concealment, or misrepresentation vis-a-vis the government, and not theft, embezzlement, or misappropriation vis-a-vis the taxpayer. A third-party tax preparer who steals from his client cannot be convicted of 26 U.S.C. § 7201 without also committing one of the affirmative evasive acts previously discussed. *Leathers v. United States,* 250 F.2d 159 (9th Cir.1957) (upholding defendant—accountant's § 7201 conviction where he both (1) prepared and filed a false return for his client and (2) defrauded his client by collecting an excess amount of money supposedly for payment to the IRS).

In the instant case, with respect to the counts Araujo challenges, the record indicates that Araujo did not file a false return nor attempt to conceal assets from the IRS, nor was she charged in the indictment with filing a false return or failure to file a return.

In *United States v. Mesheski,* 286 F.2d 345, 346 (7th Cir.1961), a case factually similar to this one, the issue was whether a "a person who converts money entrusted to him by another for the payment of such other's income tax by failing to turn it over to the Internal Revenue Service [is] guilty

of a felony within the meaning of [26 U.S.C.] Section 7201 ...." The court said no, holding that the defendant's conduct (prepared tax returns for others, failed to file those returns, and diverted to his own use his taxpayer-clients' money which was to go to the IRS) did not constitute such affirmative conduct inferring the motive to evade or defeat tax, as to make him guilty of a felony under 26 U.S.C. § 7201.

Further support for this decision is gleaned from the IRS itself, which defines violations of § 7201 in terms of some kind of fraud against the government, not theft from individuals.

For example, in the INTERNAL REVENUE MANUAL, which is the internal instruction manual for the agents, I.R.M. § 9.1.3.3.2.3—WILLFULNESS (in the context of § 7201) specifically cites the examples the Supreme Court set forth in *Spies.*

In INTERNAL REVENUE MANUAL § 9.1.3.3.2.2.2—ATTEMPT TO EVADE OR DEFEAT ANY TAX § 7201, the IRS again cites the examples from *Spies,* 317 U.S. at 499, 63 S.Ct. 364, which stated that the "affirmative act" language should be construed broadly to include, *inter alia:* (1) filing false returns, (2) keeping a double set .of books, (3) making false entries or alterations, (4) making false invoices or documents, (5) destroying books or records, (6) concealing assets or covering up sources of income, or (7) avoiding making records usually kept for transaction or conduct where the likely effect would be to mislead or to conceal.

All of these examples involve some kind of concealment from or misrepresentation to the IRS, not individuals. The INTERNAL REVENUE MANUAL specifically states that

"[i]n an attempt to evade or defeat the payment of any tax, the mere failure or *willful failure to pay any tax does not*

*constitute* an attempt to evade or defeat the payment of any tax .... Examples of such action or conduct relating to the attempted evasion of the payment of the tax are found in [*United States v. Giglio,* 232 F.2d 589 (2d Cir.1956)]. These are as follows: (a) concealing assets; (b) reporting income through others; (c) misappropriating, converting, and directing corporate assets; (d) filing late returns; (e) failing to withhold taxes as required by law; (f) filing false declarations of estimated taxes; (g) filing false tentative corporate returns." I.R.M. § 9.1.3.3.2.2.2 (emphasis added).

Thus, on the challenged counts, while Araujo defrauded and stole from her clients and violated their trust, she did not evade or attempt to evade tax within the meaning of 26 U.S.C. § 7201.

I would reverse Araujo's convictions on Counts 13—17 and remand for re-sentencing accordingly.